STATE OF CONNECTICUT *v.* SUSAN TANGARI
(14967)

Foti, Heiman and Stoughton, Js.

Argued November 5, 1996—officially released February 4, 1997

*Robert P. Pickering*, with whom, on the brief, was *F. Mac Buckley*, for the appellant (defendant).

*Marjorie Allen Dauster*, assistant state's attorney, with whom, on the brief, were *Mark S. Solak*, state's attorney, *Mark A. Stabile*, supervisory assistant state's attorney, and *Roger R. Caridad*, assistant state's attorney, for the appellee (state).

HEIMAN, J. The defendant appeals from the judgment of conviction, rendered after a court trial, of larceny in the first degree in violation of General Statutes § 53a-122 (a) (4).[1] The defendant was found not guilty of a charge of larceny in the second degree in violation of General Statutes § 53a-123. The defendant asserts that her conviction is fatally flawed because the trial court (1) ineffectively canvassed her when she withdrew her claim for a jury trial and elected to be tried by the court and (2) found her guilty of larceny in the first degree when the evidence was insufficient to establish that she possessed the requisite intent to com-

---

[1] General Statutes § 53a-122 (a) provides in pertinent part: "A person is guilty of larceny in the first degree when he commits larceny as defined in section 53a-119 and . . . (4) the property is obtained by defrauding a public community, and the value of such property exceeds two thousand dollars."

General Statutes § 53a-119 provides in pertinent part: "A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner. Larceny includes, but is not limited to . . .

"(6) Defrauding of public community. A person is guilty of defrauding a public community who (A) authorizes, certifies, attests or files a claim for benefits or reimbursement from a local, state or federal agency which he knows is false; or (B) knowingly accepts the benefits from a claim he knows is false; or (C) as an officer or agent of any public community, with intent to prejudice it, appropriates its property to the use of any person or draws any order upon its treasury or presents or aids in procuring to be allowed any fraudulent claim against such community. For purposes of this subdivision such order or claim shall be deemed to be property. . . ."

mit that crime. We are unpersuaded and affirm the judgment of the trial court.

The following facts are pertinent to our resolution of this appeal. The defendant was employed as the assistant tax collector for the town of Ashford beginning June 2, 1988. She had previously worked as an assistant bookkeeper for the town of Coventry and was familiar with municipal finance. As assistant tax collector, the defendant, along with the tax collector, collected taxes remitted to the town by its taxpayers, gave the proper receipts for payments, validated the rate bills for the paid taxes, deposited the tax money received, balanced the rate bills with the receipts of tax payments, and reported the collection of taxes to the town treasurer.

Maryann Simpson was elected tax collector of Ashford and took office on November 18, 1991. At the time that she took over the office of tax collector, she requested that an exit audit be conducted. An exit audit was conducted by Gary Houser and Stan Cusick of the accounting firm of Cole, Frago, Cusick, Chestler and Company. When Houser went to the office of the tax collector on November 18 or 19, 1991, he discovered that the tax collector's rate book, the detailed record of the tax collector's actions, had not been posted after July 2, 1991. The auditors determined that the sum of $2420.75 was missing and that Ashford had suffered a financial loss in excess of $2000.

On the deposit slips prepared by the defendant for the tax collector between February 8 and March 5, 1991, only $4.39 was identified as cash. The remainder of the deposits consisted of checks. Several checks included in these deposits represented alleged payments for taxes for which no validated tax bill could be found. A validated tax bill is a form of receipt showing the payment of the tax as indicated on the rate or tax bill.

During this period of time, approximately $2000 in cash was paid to the town by way of tax payments. The defendant received those payments directly from taxpayers in cash and validated rate bills for the payments. Many of the notations on the validated rate bills are in the handwriting of the defendant. Moreover, the defendant prepared all of the deposits during this period of time, made regular reports to the town treasurer that conformed to the amount shown on the deposit slips she prepared, and had unrestricted access to the office cash register. Many taxpayers who had made payments to the defendant were reported as being delinquent.

Robert Brousseau, an employee of the division of criminal justice, conducted a review of the tax collector's records for the period February 11 to March 5, 1991. During this review, Brousseau examined the rate bills, register tapes, reports to the treasurer and bank photocopies of deposit records. He examined five consecutive deposits collectively and also analyzed a deposit for May 3, 1991. He determined that in the five consecutive deposits there were checks that pertained to validated rate bills for which there was no evidence that payments had been made. Moreover, there were checks listed in the deposits that did not correspond to any validated rate bills. Additionally, in his examination of the deposit of May 3, 1991, he determined that the deposit showed cash of about $1800, but that there were not sufficient rate bills that had not been paid by check to support that amount of cash.

On the basis of his review, Brousseau determined that the defendant had perpetrated a lapping scheme in the tax collector's office. Brousseau explained that the defendant rotated individual checks and money orders in order to conceal her taking of cash. Brousseau determined that the total deposits should have been in the amount of $41,700 and that the deposits totaled

only $38,355. Thus, he determined that Ashford had lost $3345.

The defendant testified in her own behalf. She testified that she had never taken money that belonged to Ashford and that any missing money was taken by the former tax collector, Robin LaRosa.

The defendant asserted that in late 1989 she had observed LaRosa manipulating checks being run through the cash register. She testified that LaRosa was collecting statutory fees for tax warrants issued and that when a check came into the tax office to make a payment or to make a partial payment on a tax warrant, the fees would be included in the payment. It was the defendant's claim that LaRosa would put the check into the register and take cash from the register to cover the amount of her fees. She further claimed that when there was insufficient cash to cover the fees, LaRosa would take checks or money orders of sufficient amount to cover the unpaid portion of the fees. Then, when cash came in, LaRosa would take the cash and replace it with the checks or money orders that she had previously removed. The defendant also testified that LaRosa often cashed paychecks and personal checks from the cash drawer.

On the basis of the evidence before it, the trial court found the defendant guilty of larceny in the first degree and not guilty of larceny in the second degree.

I

The defendant first claims that the trial court failed to canvass her properly at the time that she withdrew her election to be tried by the jury and elected to be tried by the court. The defendant posits that this failure to canvass properly left the trial court without the ability to determine whether her waiver of her right to a jury trial was knowing, intelligent and voluntary. The

defendant asserts that this violated her fundamental right to a jury trial, guaranteed by the United States[2] and Connecticut[3] constitutions. We do not agree.

Certain additional facts are necessary to an understanding of our resolution of this issue. On November 10, 1992, the defendant was presented at the Superior Court in geographical area eleven, on a charge of larceny in the first degree. The court gave an advisement of rights to all persons present, including the defendant, that included the fact that the defendant was entitled to a trial by jury. The court ordered the defendant's case transferred to the Putnam Superior Court. On November 20, 1992, the defendant appeared before the Putnam Superior Court, pleaded not guilty and elected to be tried by a jury.

On April 30, 1993, the defendant and her counsel appeared before the trial court. Counsel informed the trial court that while the not guilty pleas were to stand, the election for jury trial was to be withdrawn. Defense counsel requested that the matter be set down for trial by the court.[4] After both defense counsel and the state's attorney had finished making statements to the court concerning the possible exchange of information, the

---

[2] The constitution of the United States, article three, § 2, provides in pertinent part: "The trial of all Crimes, except in Cases of Impeachment, shall be by jury . . . ." In addition, the sixth amendment to the United States constitution provides in pertinent part: "In all criminal prosecutions, the accused shall enjoy the right to a . . . trial, by an impartial jury . . . ."

[3] The constitution of Connecticut, article first, § 8, provides in pertinent part: "In all criminal prosecutions, the accused shall have a right . . . to a speedy, public trial by an impartial jury. . . ." Moreover, article first, § 19, of the Connecticut constitution provides: "The right of trial by jury shall remain inviolate."

[4] The defendant's counsel's request to the trial court was as follows: "It's our intention today to withdraw the claim for a jury trial in this matter, let the not guilty pleas stand and ask that the matter be set down for a court trial . . . ."

trial court addressed the defendant directly. The trial court asked the defendant whether she had discussed with her attorney the change in election of the method of trial and whether she understood that she was giving up her right to a jury trial. The defendant answered both inquiries affirmatively.[5] Accordingly, the matter was transferred to the court trial list and proceeded before the court without a jury.

The defendant concedes that her present claim was not raised before the trial court and was thus not properly preserved. The defendant seeks review of this claim under the standards of *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[6] Since the record is adequate for review and the claim advanced implicates a fundamental constitutional right; see *Boykin* v. *Alabama*, 395 U.S. 238, 242–43, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969); the defendant has satisfied the first two prongs of *Golding*, and is entitled to a review of her unpreserved claim. See *State* v. *Golding*, supra, 239–40.[7]

We first set out the standard of review that applies to claims such as that advanced by the defendant. "The right to a jury trial in a criminal case is among those

---

[5] The colloquy between the defendant and the court was as follows:

"The Court: No problem at all. Friday the 4th. Miss Tangari, you've discussed this change thoroughly with your lawyer?

"The Defendant: Yes.

"The Court: You understand you're giving up your right to have a jury trial?

"The Defendant: Yes.

"The Court: Transferred then to the court list and continued under the same bond until June 4."

[6] While the defendant does not specifically direct us to *State* v. *Golding*, supra, 213 Conn. 233, as the source of her authority to seek review, she does direct us to the earlier case of *State* v. *Evans*, 165 Conn. 61, 327 A.2d 576 (1973).

[7] "The first two conditions [of *Golding*] are determinations of whether a defendant's claim will be reviewed, and the third condition involves a review of the claim itself." *State* v. *Graham*, 33 Conn. App. 432, 442, 636 A.2d 852, cert. denied, 229 Conn. 906, 640 A.2d 117 (1994).

constitutional rights which are related to the procedure for the determination of guilt or innocence. The standard for an effective waiver of such a right is that it must be knowing and intelligent, as well as voluntary. . . . This strict standard precludes a court from presuming a waiver of the right to a trial by jury from a silent record. . . . In determining whether this strict standard has been met, a court must inquire into the totality of the circumstances of each case. . . . When such a claim is first raised on appeal [such as in this case], our focus is on compliance with these constitutional requirements rather than on observance of analogous procedural rules prescribed by statute or by the Practice Book." (Internal quotation marks omitted.) *State* v. *Groomes*, 232 Conn. 455, 474–75, 656 A.2d 646 (1995).

Applying these principles, we conclude that the record supports a determination that the trial court sufficiently complied with the constitutional requirement of advising the defendant that by electing a trial to the court, she was giving up or waiving her right to be tried by a jury. When asked about her decision to waive a jury trial, the defendant confirmed that she had discussed the decision to give up her right to a jury trial with her counsel and that she understood that by electing a court trial she was giving up her right to a trial by jury.

"The determination of whether there has been an intelligent waiver . . . must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience and conduct of the accused." (Internal quotation marks omitted.) *State* v. *Shockley*, 188 Conn. 697, 707, 453 A.2d 441 (1982). We first note that this is not a silent record. See *State* v. *Alicea*, 41 Conn. App. 47,

54–55, 674 A.2d 468 (1996). Here, the record reflects that the defendant had been advised of her constitutional right to a trial by jury in open court at her arraignment. Further, the defendant was represented by competent counsel and she indicated that she had fully discussed with her attorney her waiver of the right to a jury trial. Cf. *Oppel* v. *Lopes*, 200 Conn. 553, 557, 512 A.2d 888 (1986); *State* v. *Alicea*, supra, 56–57. Moreover, the defendant responded affirmatively when asked whether she understood that by electing to be tried by the court, she was giving up her right to a trial by jury.

We conclude, in light of the totality of the circumstances on the record, that the defendant waived her right to a jury trial and that her waiver was voluntary, knowing and intelligent.[8]

## II

Next, the defendant asserts that the evidence produced at trial was insufficient to establish that she possessed the requisite intent to deprive another person of property or to appropriate the same to herself or a third party. See General Statutes § 53a-122 (a) (4) and General Statutes § 53a-119 (6). We are unpersuaded.

" 'When called on to review a challenge to the sufficiency of the evidence to support a conviction, we undertake a two part analysis. . . . First, we construe the evidence in the light most favorable to sustaining

---

[8] We do not discuss separately the defendant's claim that the action of the trial court violated rights guaranteed to her under the Connecticut constitution. Our Supreme Court has determined that there is "no reason to demand as a constitutional necessity a more elaborate procedure for an effective waiver of the right of jury trial as guaranteed by our state constitution." *State* v. *Marino*, 190 Conn. 639, 646, 462 A.2d 1021 (1983). We are, of course, bound by the decisional law of our Supreme Court. *State* v. *Reis*, 33 Conn. App. 521, 527, 636 A.2d 872, cert. denied, 229 Conn. 901, 640 A.2d 118 (1994).

the [finding]. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [trial court] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt.' " *State* v. *Cintron*, 39 Conn. App. 110, 118, 665 A.2d 95 (1995).

The trial court articulated on the record the factual findings that led it to find the defendant guilty of the charge of larceny in the first degree. The trial court found that the town lost $3345 in cash receipts. It also found that many taxpayers identified the defendant as the person to whom cash payments were made and who had validated their rate bills. The trial court further determined from the evidence that the defendant prepared all of the deposit slips and reports to the town treasurer during the period when the cash was taken. Moreover, the court determined that the reports conformed to the amounts shown on the deposit slips as a result of a lapping scheme carried out by the defendant.

The trial court further found that the defendant's testimony that her supervisor routinely withdrew cash from the register in payment of certain statutory fees and to cash paychecks and personal checks lacked credibility. The evidence disclosed that during the period in question no paychecks or personal checks of the tax collector were reflected in the deposits and that the statutory fees involved were nominal.

The trial court found that the circumstantial evidence produced and the reasonable inferences drawn therefrom proved the defendant guilty of the crime of larceny in the first degree by defrauding a public community of a sum in excess of $2000.

"In applying this analytical framework to the circumstances before us, we acknowledge that it appears that

the defendant's conviction is premised, in large measure, on circumstantial evidence. [I]t is of no moment that much of the relevant evidence may be circumstantial. . . . [T]here is no legal distinction between direct and circumstantial evidence so far as probative force is concerned. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence." (Internal quotation marks omitted.) *State* v. *Haggood*, 36 Conn. App. 753, 760–61, 653 A.2d 216, cert. denied, 233 Conn. 904, 657 A.2d 644 (1995).

"We must also acknowledge in our review of the evidence that it is the right and the duty of the [fact finder] to draw reasonable and logical inferences from the evidence. . . . Moreover, the [fact finder] may draw inferences on the basis of facts that it finds as a result of other inferences. . . . [I]n viewing evidence which could yield contrary inferences, the [fact finder] is not barred from drawing those inferences consistent with guilt and is not required to draw only those inferences consistent with innocence. The rule is that the [fact finder's] function is to draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . . We do not sit as [an alternate fact finder] who may cast a vote against the verdict based upon our feeling that some doubt of guilt is shown by the cold printed record. We have not had the [fact finder's] opportunity to observe the conduct, demeanor, and attitude of the witnesses and to gauge their credibility." (Citations omitted; internal quotation marks omitted.) Id., 761.

"In considering the evidence introduced in a case, [fact finders] are not required to leave common sense at the courtroom door . . . nor are they expected to lay aside matters of common knowledge or their own observations and experience of the affairs of life, but,

on the contrary, to apply them to the facts in hand, to the end that their action may be intelligent and their conclusions correct." (Citation omitted; internal quotation marks omitted.) *State* v. *Patterson,* 35 Conn. App. 405, 414, 646 A.2d 258, cert. denied, 231 Conn. 930, 649 A.2d 254 (1994); see also *State* v. *Little,* 194 Conn. 665, 674, 485 A.2d 913 (1984).

After a careful review of all of the evidence, we conclude that the cumulative effect of the evidence was sufficient to permit the trial court to have found the defendant guilty of the crime of larceny in the first degree. Thus, the defendant's assertion that the state failed to prove the intent of the defendant to prejudice Ashford by depriving it of property is without merit.

The judgment is affirmed.

In this opinion the other judges concurred.