STATE OF CONNECTICUT *v.* WILBERT CHAPMAN, JR.
(AC 15426)

Heiman, Spear and Stoughton, Js.

Argued April 29—officially released July 29, 1997

*James B. Streeto*, special public defender, for the appellant (defendant).

*Robert J. Scheinblum*, deputy assistant state's attorney, with whom, on the brief, were *John A. Connelly*, state's attorney, and *Cara Eschuk*, assistant state's attorney, for the appellee (state).

*Opinion*

HEIMAN, J. The defendant appeals from the judgment of conviction, rendered after a trial to the court, of risk of injury to a child in violation of General Statutes (Rev. to 1993) § 53-21.[1] The defendant's motion for judgment of acquittal as to a count charging him with assault in the second degree in violation of General Statutes § 53a-60 (a) (2)[2] was granted by the trial court after the state had completed presentation of its evidence. On appeal, the defendant claims that his conviction is fatally flawed because the trial court (1) permitted the defendant to be tried by the court when the defendant had not properly waived his constitutional right to a trial by jury, (2) unconstitutionally enlarged the crime with which the defendant had been charged by finding the defendant guilty of risk of injury to a child on the basis of facts not alleged in the long form information, (3) found the defendant guilty of the crime of risk of injury to a child when the evidence was insufficient to support the conviction and (4) rendered inconsistent findings by determining the defendant to be not guilty

[1] General Statutes (Rev. to 1993) § 53-21 provides: "Any person who wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that its life or limb is endangered, or its health is likely to be injured, or its morals likely to be impaired, or does any act likely to impair the health or morals of any such child, shall be [punished]."

[2] General Statutes § 53a-60 provides in pertinent part: "(a) A person is guilty of assault in the second degree when . . . (2) with intent to cause physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument . . . ."

of the crime of assault in the second degree and guilty of risk of injury to a child. We are unpersuaded and affirm the judgment of the trial court.

The following facts are pertinent to our resolution of this appeal. The defendant is the father of the victim, who was nineteen months old at the time of the offense. The victim lived with his mother, and the defendant was living separate and apart from the child and the child's mother. On occasion, however, the victim's mother would ask the defendant to care for the child.

On January 29, 1994, the victim's mother left the child in the care of the defendant who was living with Joy Johnson, the mother of three children by the defendant. While Johnson was at work, the defendant cared for all four children, including the victim. On February 4, 1994, Johnson went to the victim's mother's home and informed her that the defendant was going to keep the child with him for another week. While at the victim's home, Johnson picked up clothing for the child.

On February 7, 1994, the defendant went to the home of the victim's mother and told her that the child had been injured. The defendant requested that the victim's mother give him her medical card so that he could obtain medical treatment for the victim. The victim's mother asked the defendant what had happened and he told her that the child had fallen from a riding toy and that his penis was swollen. The victim's mother gave the defendant her medical card and, shortly after midnight on February 8, 1994, the defendant took the victim to the emergency room of Waterbury Hospital.

On February 9, 1994, the victim's mother, accompanied by two friends, went to the Johnson home. She entered the house alone and observed that the victim had scratches on his chest and that his face appeared to be swollen. When asked how the victim had received the scratches, the defendant replied that the victim had

probably received them when he took the child out of the bathtub because he had almost drowned. The victim's mother requested that the defendant return the child to her home. The defendant said that he would bring the child home that afternoon.

On February 11, 1994, the defendant returned the victim to his mother. The defendant told the victim's mother that he would not watch the child again because the child was bad and would not listen. The defendant also told her that the victim had knocked over some hot water and that it had almost burned the defendant and one of his other sons. After making those statements, the defendant left the victim's mother's home.

The victim's mother noticed that the child was limping and, when she removed his clothing, she noted that he had bandages taped around his ankles. She removed the bandages and noted blisters on the heels of both of the victim's feet. She removed the victim's diaper and saw that the child's penis was swollen to about three times its normal size. She also noted burn marks under the victim's scrotum. The victim's mother called an ambulance and the child was transported to St. Mary's Hospital, where he was treated. The child was then transferred to Waterbury Hospital, where he remained for observation until February 15, 1994.

The defendant elected to have his case tried before the court. The case was tried on April 26 and 27, 1995. At trial, Johnson testified that on February 7, 1994, when the defendant was bathing three of the children, the victim almost drowned in the bath. The defendant lifted the victim out of the bath and ran into the hallway, hitting the victim's scrotum and penis on a metal fish tank stand that stood in the hallway. Johnson further testified that the scratches on the victim's chest were most likely caused by the defendant's long fingernails. Finally, Johnson testified that the defendant told her

that the victim had pulled a pan of boiling water from the table and onto the floor, burning his feet and ankles.

Devica Ramikissoon, the physician who treated the victim at Waterbury Hospital, also testified. Ramikissoon explained that, when the victim arrived at Waterbury Hospital, he had a number of lesions on his body. The lesions were shallow ulcers and abrasions, and the skin was broken. The lesions were made up of approximately ten identical looped marks, which Ramikissoon testified were all caused by the same instrumentality.

The state's expert witness, Betty Spivack, the director of Hartford Hospital's pediatric intensive care unit and an expert on child abuse, testified that the alleged incidents of near drowning, contact with the fish tank stand, bathtub, boiling water and sharp fingernails, and a fall from a riding toy would not explain the victim's injuries. She testified that, in her opinion, the victim's injuries indicated that he was restrained by the ankles and beaten with a thin, looped cord or wire instrument. No direct evidence of the use of a weapon was presented at trial.

The court rendered a judgment of acquittal on the charge of assault in the second degree and found the defendant guilty of the charge of risk of injury to a child. This appeal follows.

I

The defendant first claims that he did not execute a valid waiver of his constitutional right to a jury trial. We are unpersuaded.

Certain additional facts are necessary to an understanding of our resolution of this issue. The record reflects that the defendant was advised of his right to

a jury trial in open court at his arraignment.[3] At that time, the defendant requested that a special public defender be appointed to represent him. Attorney Ernest Diette was appointed to represent the defendant, who initially elected a jury trial.[4] After further discussing the matter with counsel, the defendant subsequently elected a court trial.[5] On the day of trial, the court again put the defendant to plea and the defendant indicated that he had discussed the matter with his attorney and chose to be tried by the court.[6]

The defendant concedes that this claim was not properly preserved at trial and seeks review of this claim under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[7] "Since the record is adequate for review and the claim advanced implicates a fundamental constitutional right; see *Boykin* v. *Alabama*, 395 U.S. 238,

---

[3] At the arraignment, the trial court, *DiPentima, J.*, instructed all present, including the defendant, as follows: "You have the right to plead not guilty to the charges against you, and to request a trial either by judge or jury in most cases. You have the right to a public and speedy trial. The state is required to prove your guilt beyond a reasonable doubt."

[4] "[Court Clerk]: Twelve criminal, Wilbert Chapman.

"The Court: Good morning, Mr. Chapman.

"[Defendant's Counsel]: Your Honor, might we enter pro forma not guilty pleas, jury election.

"The Court: Noted."

[5] "[Assistant State's Attorney]: Your Honor, on the jury docket, State vs. Wilbert Chapman. It is line 13 on the jury docket. Attorney Diette represents the defendant in this case. I understand, if it hasn't already been done, that counsel is going to move for trial by court.

"[Defense Counsel]: That's correct, Your Honor. This is a child—an abuse of his own child and therefore—I've discussed it with him that we would both prefer having a court trial."

[6] "The Court: How do you elect to be tried, sir, by the court or by the jury?

"[The Defendant]: By the court.

"The Court: Very well. Have you discussed this with your attorney?

"[The Defendant]: Yes."

[7] "The first two conditions [of *Golding*] are determinations of whether a defendant's claim will be reviewed, and the third condition involves a review of the claim itself." *State* v. *Graham*, 33 Conn. App. 432, 442, 636 A.2d 852, cert. denied, 229 Conn. 906, 640 A.2d 117 (1994).

242–43, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969); the defendant has satisfied the first two prongs of *Golding*, and is entitled to a review of [his] unpreserved claim." *State* v. *Tangari*, 44 Conn. App. 187, 193, 688 A.2d 1335, cert. denied, 241 Conn. 901, 693 A.2d 304 (1997).

We first set out the applicable standard of review. "The right to a jury trial in a criminal case is among those constitutional rights which are related to the procedure for the determination of guilt or innocence. The standard for an effective waiver of such a right is that it must be knowing and intelligent, as well as voluntary. . . . This strict standard precludes a court from presuming a waiver of the right to a trial by jury from a silent record. . . . In determining whether this strict standard has been met, a court must inquire into the totality of the circumstances of each case. . . . When such a claim is first raised on appeal . . . our focus is on compliance with these constitutional requirements rather than on observance of analogous procedural rules prescribed by statute or by the Practice Book." (Internal quotation marks omitted.) *State* v. *Groomes*, 232 Conn. 455, 474–75, 656 A.2d 646 (1995).

This case is governed by our decision in *State* v. *Tangari*, supra, 44 Conn. App. 187. In *Tangari*, we held that the defendant knowingly, voluntarily and intelligently waived her right to a jury trial because she was advised of her right to a jury trial in open court, was represented by competent counsel, discussed the waiver of a jury trial with counsel, and responded affirmatively when asked whether she understood that, by electing to be tried by the court, she was giving up the right to a trial by jury. Id., 195. Here, as in *Tangari*, the record is not silent, but rather reflects that the defendant was advised of his right to a jury trial in open court. The defendant had competent appointed counsel and initially elected a jury trial. After discussing the matter with his attorney, the defendant changed his

election and chose a court trial. Furthermore, on the day of trial, the court again asked the defendant, "How do you elect to be tried, sir, by the court or by the jury?" The defendant responded, "By the court." When asked if he had discussed this with counsel, the defendant responded affirmatively.

"The determination of whether there has been an intelligent waiver . . . must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." (Internal quotation marks omitted.) *State* v. *Shockley*, 188 Conn. 697, 707, 453 A.2d 441 (1982). Viewing the totality of circumstances, we conclude that the defendant waived his right to a jury trial and that the waiver was knowing, voluntary and intelligent.

## II

The defendant next claims that the trial court unconstitutionally enlarged the crime with which he had been charged by finding him guilty of violating the risk of injury statute on a factual scenario and statutory subsection not alleged in the long form information. The trial court found that the defendant violated each of the three disjunctive provisions of § 53-21,[8] although the long form information charged the defendant with violating only the third provision, committing "an act likely to impair the health of a child under the age of sixteen years." Thus, the defendant claims that the trial court improperly enlarged the crime charged in violation of his sixth amendment right to be informed of the charges against him. We are unpersuaded.

"The sixth amendment to the United States constitution and article first, § 8, of the Connecticut constitution guarantee a criminal defendant the right to be informed

---

[8] See footnote 1.

of the nature of the charge against him with sufficient precision to enable him to prepare his defense and to avoid prejudicial surprise, and . . . to enable him to plead his acquittal or conviction in bar of any future prosecution for the same offense . . . ." (Internal quotation marks omitted.) *State* v. *Marra*, 222 Conn. 506, 527, 610 A.2d 1113 (1992), quoting *State* v. *Scognamiglio*, 202 Conn. 18, 22, 519 A.2d 607 (1987).

"The defendant's conviction under either [factual] scenario would consequently bar a subsequent prosecution for that crime. . . . Because the defendant's conviction is sufficient to bar reprosecution, to establish an infringement of his right to be informed of the nature and cause of the accusations against him, he must demonstrate that [any enlargement] caused him prejudicial surprise or detrimentally affected the presentation of his defense." (Citation omitted.) *State* v. *Marra*, supra, 222 Conn. 528.

The defendant's conviction was based on the single act of restraining his child by the ankles and beating him with a thin looped cord or wire. The information clearly charged the defendant with violating § 53-21 by committing an act "likely to impair the health of a child under the age of sixteen years to wit he struck [the minor child] then aged 19 months . . . with an instrument causing injury and pain" and his conviction is clearly based on this factual scenario and statutory provision. Thus, an unconstitutional enlargement is not in issue. See *State* v. *Lemoine*, 39 Conn. App. 657, 665, 666 A.2d 825 (1995).

Moreover, "[t]he defendant can gain nothing from his present claim without showing that he was in fact prejudiced in his defense on the merits and that substantial injustice was done to him because of the language of the information. . . . As the state's pleadings here informed the defendant of the charge against him with

sufficient precision to enable him to prepare his defense and to avoid prejudicial surprise, and were definite enough to enable him to plead his acquittal or conviction in bar of any future prosecution for the same offense, they have performed their constitutional duty." (Citations omitted.) *State* v. *Sumner*, 178 Conn. 163, 168, 422 A.2d 299 (1979).

We conclude that the defendant's claim that the trial court improperly enlarged the charge against him is meritless.

### III

The defendant next argues that the evidence produced at trial was insufficient to support his conviction for risk of injury to a child. The defendant specifically asserts that, because the trial court found that the state had not proven beyond a reasonable doubt that the defendant employed a deadly weapon or dangerous instrument and thereby found the defendant not guilty of assault in the second degree, the evidence was insufficient to convict the defendant of risk of injury to a child. We are unpersuaded.

"When called on to review a challenge to the sufficiency of the evidence to support a conviction, we undertake a two part analysis. . . . First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [trier of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Cintron*, 39 Conn. App. 110, 118, 665 A.2d 95 (1995).

While the use of a deadly weapon or dangerous instrument to injure the victim is an essential element of the

crime of assault in the second degree,[9] the use of a deadly weapon or dangerous instrument is not an element of the crime of risk of injury to a child.[10] Thus, the trial court's finding that the state failed to prove beyond a reasonable doubt that the defendant employed a weapon or instrument did not affect the sufficiency of the evidence required to support the defendant's conviction of risk of injury to a child.

Moreover, the evidence presented at trial was sufficient to support the defendant's conviction of risk of injury to a child. The state produced evidence that the infant victim was in the sole care of the defendant when he was repeatedly and traumatically injured. Both Johnson and Ramkissoon testified as to the extent of the victim's injuries. Further, Spivak testified that the explanations given for the victim's injuries were not logical, and, in her opinion, the victim's injuries were caused by his being restrained by the ankles and beaten with a cord or wire.

"When there is evidence that . . . the injuries occurred while the child was in the sole [care] of the [defendant], the [trier of fact] is permitted to infer not only that the child's injuries were not accidental but that, in addition, they occurred at the culpable hands of [the defendant]." (Internal quotation marks omitted.) *State* v. *Dumlao*, 3 Conn. App. 607, 623, 491 A.2d 404 (1985).

" '[I]t is of no moment that much of the relevant evidence may be circumstantial. . . . [T]here is no legal distinction between direct and circumstantial evidence so far as probative force is concerned. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence.' " *State* v. *Cintron*, supra,

---

[9] See footnote 2.

[10] See footnote 1.

39 Conn. App. 118. "Circumstantial evidence may be used to prove all elements of a crime beyond a reasonable doubt." *State* v. *Dumlao*, supra, 3 Conn. App. 623.

"[I]t is the right and the duty of the [trier of fact] to draw reasonable and logical inferences from the evidence. . . . In considering the evidence introduced in a case, [triers of fact] are not required to leave common sense at the courtroom door . . . nor are they expected to lay aside matters of common knowledge or their own observations and experience of the affairs of life, but, on the contrary, to apply them to the facts in hand, to the end that their action may be intelligent and their conclusions correct." (Citations omitted; internal quotation marks omitted.) *State* v. *Cintron*, supra, 39 Conn. App. 118–19.

We will not second guess the trial court's determination on the basis of some vague, speculative or amorphous feeling that some doubt of guilt may be shown by the cold printed record. See id. We have not had the trier of fact's opportunity to observe the conduct, demeanor and attitude of the witnesses and to gauge their credibility. See id.

We conclude that the evidence presented at trial was sufficient to support the defendant's conviction of risk of injury to a child, and the defendant's claim to the contrary is without merit.

IV

Finally, the defendant claims that the trial court improperly found him guilty based on inconsistent findings of fact. We do not agree.

The defendant was charged with assault in the second degree in violation of § 53a-60 (a) (2). Section 53a-60 provides in pertinent part: "(a) A person is guilty of assault in the second degree when . . . (2) with intent to cause physical injury to another person, he causes such injury to such person or to a third person by means

of a deadly weapon or a dangerous instrument other than by means of the discharge of a firearm . . . ." After the state rested its case-in-chief, the trial court granted the defendant's motion for a judgment of acquittal as to the assault charge, finding that the state had failed to prove the use of a deadly weapon or dangerous instrument. Specifically, no weapon was ever recovered or identified by the state and there was no evidence of the use of a weapon other than opinion testimony as to the probable size and shape of the instrument used to inflict the injuries.

The defendant asserts that the trial court's granting of a judgment of acquittal on the assault charge on the basis of a lack of evidence of the use of a deadly weapon or dangerous instrument necessitated a judgment of acquittal on the charge of risk of injury to a child[11] because that ruling precluded a conviction based on the use of an instrument as alleged in the long form information.[12] Unlike assault in the second degree, however, use of a dangerous instrument is not an element of the crime of risk of injury to a child. The state produced ample evidence to support a finding that the defendant employed a looped cord or wire instrumentality to cause pain and injury, as charged in the long form information.

We conclude that the defendant's claim of inconsistent determinations is without merit.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[11] See footnote 1.

[12] Count two of the long form information stated in pertinent part: "The [assistant state's attorney for the judicial district of Waterbury, geographical area number four] further accuses the said Wilbert Chapman of risk of injury to a minor in violation of Section 53-21 Connecticut General Statutes and charges that on a date or dates between January 29, 1994 and February 11, 1994 in the City of Waterbury the defendant did an act likely to impair the health of a child under the age of sixteen years to wit he struck [the minor child] then aged 19 months . . . with an instrument causing injury and pain."