## IN RE CARISSA K. ET AL.*
## (AC 18600)

Lavery, Landau and Dupont, Js.

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

Argued September 22—officially released November 16, 1999

*David B. Rozwaski,* for the appellant (respondent D).

*Mary K. Lenehan,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *Susan T. Pearlman,* assistant attorney general, for the appellee (petitioner).

*Opinion*

LANDAU, J. The respondent D appeals from the judgments of the trial court terminating his parental rights

with respect to his daughter, C, and terminating the parental rights of Z, the putative father of J.[1] D claims that the court improperly found (1) that he failed to achieve such degree of personal rehabilitation as would encourage the belief that he could assume a responsible position in the children's lives, (2) that he committed an act of omission or commission that denied the care, guidance and control necessary for the children's welfare and (3) that termination of parental rights was in the best interests of the children. In her counterstatement of the issues, the commissioner of children and families (commissioner) claims that D lacks standing to appeal from the judgment terminating Z's parental rights as to J.[2] We dismiss D's appeal from the judgment regarding J and affirm the judgment terminating D's parental rights as to C.

The following facts are relevant to this appeal. The children, C, born February 18, 1991, and J, born September 7, 1992, first came to the attention of the department of children and families (department) in 1993, when they were briefly taken into custody because their mother was missing and D was intoxicated. In 1994, D commenced an action in the Probate Court seeking

---

[1] The petition to terminate parental rights with respect to J named as respondents Z as J's father and D as J's "psychological father." The trial court stated in its memorandum of decision that because D was not the biological father of J, it was not necessary to make findings as to whether D had denied J necessary care, guidance and control by acts of commission or omission. On the petition concerning J, the court rendered judgment terminating Z's parental rights. On the petition concerning C, the court rendered judgment terminating D's parental rights. Only D has appealed to this court, where he challenges both judgments.

[2] The appropriate procedural vehicle for contesting D's standing to appeal the termination of parental rights with respect to J is a motion to dismiss filed in the Appellate Court. See Practice Book § 66-8. "Despite this procedural lacuna, however, it is necessary to reach the issue, because a question relating to subject matter jurisdiction must always be addressed whenever it comes to the attention of the court." *Glastonbury Volunteer Ambulance Assn., Inc.* v. *Freedom of Information Commission*, 227 Conn. 848, 850 n.5, 633 A.2d 305 (1993).

custody of the children because of their mother's drug addiction.[3] At that time, D was believed to be the biological father of both children. Subsequent genetic testing excluded D as J's natural father, and Z[4] was identified as J's putative father. Nevertheless, the Probate Court awarded the children's mother and D joint custody of the children, who were to spend alternating weeks with each adult.

D's guardianship application in the Probate Court resulted in the department's reinvolvement with the family. The mandated social study conducted in connection with that application disclosed domestic abuse between D and the children's mother, alcohol and drug addiction, and concerns about D's ability to maintain adequate income and housing for the children. On September 2, 1994, C's maternal uncle disclosed to a psychotherapist that he had had oral sex with his niece. On January 27, 1995, the department secured an order of temporary custody of both children based on the chaotic living conditions at their mother's home and the alcohol and drug abuse by both D and the mother, as well as D's unstable and inadequate living conditions. The children have been in foster care since that date.

On March 29, 1995, following an overnight visit with D, C disclosed facts to a department social worker indicating that D had sexually abused her. Later, J described an incident suggesting that D had sexually abused him also. D was charged with sexual assault. In November, 1997, as the result of a plea bargain, D was convicted of risk of injury to a child and sentenced to three years imprisonment, execution suspended, with five years of probation. The trial court imposed

---

[3] The children's mother died on March 7, 1996, prior to the filing of the termination petitions.

[4] Z is not a party to this appeal. The trial court found that he had notice of the termination petition as to J, although he did not enter an appearance or participate in the trial.

as a condition of probation that D have no contact with children under the age of sixteen, including C and J, until his probationary period ended in 2002. At the time of the termination hearing that is the subject of this appeal, D was incarcerated, awaiting trial on charges that he had violated the terms of his probation.

Subsequent to her disclosure of sexual abuse, C was interviewed numerous times by police, social workers, therapists and psychiatrists. She also reported incidents of abuse to her foster mother. C's behavior, which she acted out with other children, including J, was sexually inappropriate. Both children have received psychotherapy.

On September 6, 1995, both children were committed to the care and custody of the department as uncared-for children with special needs. On April 16, 1997, the commissioner filed petitions pursuant to General Statutes (Rev. to 1997) § 17a-112[5] to terminate the parental rights of D and Z with respect to J, and of D with respect to C.[6] In each petition, the commissioner alleged two

[5] General Statutes (Rev. to 1997) § 17a-112 provides in relevant part: "(a) In respect to any child in the custody of the Commissioner of Children and Families in accordance with section 46b-129, either the commissioner, or the attorney who represented such child in a pending or prior proceeding, or an attorney appointed by the Superior Court on its own motion, or an attorney retained by such child after attaining the age of fourteen, may petition the court for the termination of parental rights with reference to such child. The petition shall be in the form and contain the information set forth in subsection (b) of section 45a-715, and be subject to the provisions of subsection (c) of said section. . . .

"(c) The Superior Court, upon hearing and notice as provided in sections 45a-716 and 45a-717, may grant a petition filed pursuant to this section if it finds by clear and convincing evidence (1) that the Department of Children and Families has made reasonable efforts to locate the parent and to reunify the child with the parent, unless the court finds in this proceeding that the parent is unable or unwilling to benefit from reunification efforts provided such finding is not required if the court has determined at a hearing pursuant to subsection (b) of section 17a-110 that such efforts are not appropriate, (2) that termination is in the best interest of the child . . . ."

[6] See footnote 1.

grounds as reasons to terminate D's parental rights: failure to achieve personal rehabilitation and denial of necessary care, guidance and control by acts of commission or omission.

At a hearing on the petitions held during four days in April, 1998, the trial court heard testimony from department social workers, the children's psychotherapists, several foster parents, the social workers and nurse involved in interviewing the children with respect to the allegations of sexual abuse and two expert witnesses. The court received twenty-five exhibits in evidence and took judicial notice of the prior proceedings involving D and the children. D was present during the trial and, through counsel, vigorously contested the termination petitions. The court found by clear and convincing evidence that each of the bases of the commissioner's petition to terminate D's parental rights with respect to C existed and that it was in C's best interest to terminate D's parental rights. The court rendered judgment accordingly. The court also terminated Z's parental rights as to J. This appeal followed. Additional facts will be stated as necessary.

I

The commissioner claims that D lacks standing to appeal from the termination of parental rights as to J. At oral argument, D stated that he was only contesting the dispositional phase, i.e., whether termination of parental rights was in the best interest of the child. He argues that the court should have permitted him to maintain his "parental rights" because "the concept of family encompasses more than traditional father and mother." We agree with the commissioner that D lacks standing to appeal any portion of the termination proceeding with respect to J.

Review by way of appeal is governed in general by General Statutes § 52-263, which provides in relevant

part: "Upon the trial of all matters of fact in any cause or action in the Superior Court . . . if either party is aggrieved by the decision of the court or judge . . . he may appeal to the court having jurisdiction from the final judgment of the court . . . ." "An aggrieved party may appeal from a final judgment, except as otherwise provided by law." Practice Book § 61-1, formerly § 4000. The question of aggrievement is essentially one of standing, and unless D is aggrieved by the decision of the trial court, he has no standing to appeal. See *Beckish* v. *Manafort*, 175 Conn. 415, 419, 399 A.2d 1274 (1978). "Where a party lacks standing to appeal, the court is without subject matter jurisdiction. *Jolly, Inc.* v. *Zoning Board of Appeals*, 237 Conn. 184, 192, 676 A.2d 831 (1996). A possible absence of subject matter jurisdiction must be addressed and decided whenever the issue is raised. . . . [W]henever a lack of jurisdiction to entertain a particular proceeding comes to a court's notice, the court can dismiss the proceeding upon its own motion." (Internal quotation marks omitted.) *Marine Midland Bank* v. *Ahern*, 51 Conn. App. 790, 797, 724 A.2d 537, cert. granted on other grounds, 248 Conn. 921, 733 A.2d 845 (1999). "The parties cannot confer subject matter jurisdiction on the court, either by waiver or by consent." (Internal quotation marks omitted.) *Jolly, Inc.* v. *Zoning Board of Appeals*, supra, 192.

The following additional facts are necessary for our review of this claim. On January 27, 1995, the court, *Sequino, J.*, granted an ex parte order of temporary custody as to C and J. Simultaneously, neglect petitions naming the children's mother and D as parents also were filed. On February 7, 1995, the court, *Sequino, J.*, ordered paternity testing. The results excluded D as J's natural father and the court ordered D's name stricken from the neglect petition as to J. At the extension of commitment hearing held on February 27, 1997, the court, *Jones, J.*, conferred full party status on D with

respect to the termination involving J because D was deemed to be J's psychological father, he was the petitioner in the Probate Court guardianship proceedings and was named as J's father on the neglect petition. Following the trial on the termination petitions, the court, *Quinn, J.*, found that genetic tests had excluded D as J's "biological father." The court, therefore, did not adjudicate either phase of the termination proceedings as to J with respect to D.[7]

" 'Termination of parental rights' means the complete severance by court order of the legal relationship, with all its rights and responsibilities, between the child and the child's parent or parents . . . ." General Statutes § 45a-707 (8). "Termination of parental rights is a most serious and sensitive judicial action." (Internal quotation marks omitted.) *In re Barbara J.*, 215 Conn. 31, 44, 574 A.2d 203 (1990). "Since termination of parental rights is the ultimate interference by the state with the natural rights of parents in their children, resulting in an everlasting severance of the legal relationship, and usually the permanent separation of parent and child as well, courts must require strict adherence to the statutory standards." *In re Migdalia M.*, 6 Conn. App. 194, 203, 504 A.2d 533, cert. denied, 199 Conn. 809, 508 A.2d 770 (1986).

Chapter 319a, part I, of our General Statutes concerns dependent and neglected children, and includes § 17a-112, titled, "Termination of parental rights of child committed to commissioner." General Statutes § 17a-93 contains the definitions used throughout the chapter, including § 17a-112. The word *parent* means "natural or adoptive parent . . . ." General Statutes § 17a-93 (b). The rules of statutory construction require that

---

[7] We do note that the court file contains a form JD-JM-31EL, order, termination of parental rights and appointment of statutory parent/guardian, terminating D's rights in J. The judgment file, however, reflects that the court terminated only Z's parental rights with respect to J.

words in a statute be given their commonly approved meaning. General Statutes § 1-1 (a). The word *natural* means "begotten as distinguished from adopted." Merriam-Webster's Collegiate Dictionary (10th Ed. 1993). The court found that genetic testing had excluded D as J's biological father. Biological father implies that the man begot the child, which is synonymous with natural father. D does not claim that he is J's adoptive father and the court made no such finding. Instead, D claims that he is J's psychological father. Section 17a-112, however, makes no mention of a psychological father.

The court's memorandum of decision makes clear that the court did not adjudicate a termination petition concerning D with respect to J because he was not J's biological father. The court's findings and judgment pertaining to J concern Z only. Because the findings and judgment concerning J do not concern D, he has not been aggrieved and has no standing to appeal the termination of parental rights as to J.

Furthermore, this court previously considered a similar question in a termination of parental rights appeal where the child's intervening grandparent sought to delay the termination of parental rights so that she could develop a relationship with the child and adopt him. See *In re Denzel A.*, 53 Conn. App. 827, 733 A.2d 298 (1999). "After the statutory grounds for termination are proved by clear and convincing evidence in an adjudicatory phase, the question then to be decided in a dispositional phase is whether it is in the best interests of the child to sever the parent-child relationship. That is different from the question of who should have custody of the child if termination of parental rights is determined to be in the best interests of the child. See Practice Book § 33-5.

"The only reason in this case not to sever the parent-child relationship would be if the severance would

ensure that [the child] could reside with his grandmother. *Where* he should reside and *with whom*, however, are not questions that relate to whether it is in his best interests to terminate his relationship with his parents. 'It bears emphasis that a judicial termination of parental rights may not be premised on a determination that it would be in the child's best interests to terminate the parent's rights in order to substitute another, more suitable set of adoptive parents.' *In re Baby Girl B.*, [224 Conn. 263, 280, 618 A.2d 1 (1992)]. The purpose of the intervention of a grandparent in a termination of parental rights case does not include the right to effect an adoption or to obtain custody for the grandparent but is solely for the purpose of affecting the termination itself. *In re Ryan V.*, 46 Conn. App. 69, 72, 698 A.2d 371 (1997)." (Emphasis in original.) *In re Denzel A.*, supra, 53 Conn. App. 834–35.

The *In re Denzel A.* reasoning applies to the question before us. Whether Z's parental rights as to J should be terminated has nothing to do with whether D should obtain custody of J or be permitted to adopt him. That question is for another day and another legal proceeding. This court, therefore, lacks subject matter jurisdiction with respect to that portion of D's appeal concerning J, which we dismiss.

II

As to the termination of his parental rights with respect to C, D claims that the trial court improperly found that (1) he failed to achieve sufficient personal rehabilitation, (2) he committed an act of omission or commission regarding the welfare of C and (3) it was in C's best interest to terminate his parental rights. We disagree.

"The standard for review on appeal [from a termination of parental rights] is whether the challenged findings are clearly erroneous. . . . The determinations

reached by the trial court that the evidence is clear and convincing will be disturbed only if [any challenged] finding is not supported by the evidence and [is], in light of the evidence in the whole record, clearly erroneous. . . .

"On appeal, our function is to determine whether the trial court's conclusion was legally correct and factually supported. . . . We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached . . . nor do we retry the case or pass upon the credibility of the witnesses. . . . Rather, on review by this court every reasonable presumption is made in favor of the trial court's ruling. . . .

"A hearing on a petition to terminate parental rights consists of two phases, adjudication and disposition. . . . In the adjudicatory phase, the trial court determines whether one of the statutory grounds for termination of parental rights exists by clear and convincing evidence. If the trial court determines that a statutory ground for termination exists, it proceeds to the dispositional phase. In the dispositional phase, the trial court determines whether termination is in the best interest of the child." (Citations omitted; internal quotation marks omitted.) *In re Roshawn R.*, 51 Conn. App. 44, 51–52, 720 A.2d 1112 (1998).

A

D's first claim is that the court improperly found that he had failed to rehabilitate himself pursuant to § 17a-112 (c) (3) (B) with respect to C.

General Statutes (Rev. to 1997) § 17a-112 (c) provides in relevant part: "The Superior Court, upon hearing and notice as provided in sections 45a-716 and 45a-717, may grant a petition filed pursuant to this section if it finds by clear and convincing evidence . . . (3) that . . .

(B) the parent of a child who has been found by the Superior Court to have been neglected or uncared for in a prior proceeding has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child . . . ."

" 'Personal rehabilitation' as used in the statute refers to the restoration of a parent to his or her former constructive and useful role as a parent." *In re Migdalia M.*, supra, 6 Conn. App. 203. "Our Supreme Court has held that § [17a-112 (c) (3) (B)] requires the trial court to analyze the respondent's rehabilitative status as it relates to the needs of the particular child, and further, that such rehabilitation must be foreseeable within a reasonable time. . . . A determination by the trial court under § [17a-112 (c) (3) (B)] that the evidence is clear and convincing that the parent has not rehabilitated [himself] will be disturbed only if that finding is not supported by the evidence and [is], in light of the evidence in the whole record, clearly erroneous." (Citations omitted; internal quotation marks omitted.) *In re Felicia D.*, 35 Conn. App. 490, 500, 646 A.2d 862, cert. denied, 231 Conn. 931, 649 A.2d 253 (1994).

The substance of D's claim is that the court improperly found that he had not followed through on departmental referrals for prescription drug and alcohol abuse treatment, that he had an alcohol related arrest and two visits to a hospital emergency room due to alcohol and prescription drug abuse, that he was unable to find housing and that he was unemployed for long periods of time. On the basis of our review of the record, transcripts and briefs, we conclude that there is ample evidence in the record to support the court's findings with respect to D's failure to rehabilitate himself.

The court found that C had been adjudicated an uncared for child on September 6, 1995, and had been

in foster care for more than three years. In its memorandum of decision, filed more than one year after the petition to terminate D's parental rights, the court found that he was even less able to care for C than he had been at the time the petition was filed. The department had established expectations for D, which he agreed to follow. Although he regularly and consistently visited C to the extent that he was permitted to do so, D did not acknowledge his drug and alcohol problems and allegations of sexual abuse by seeking and continuing counseling and treatment for those problems. He had been unable to secure employment or suitable housing and unable to avoid further involvement with the criminal justice system. At the time of trial, he was incarcerated for violation of the terms of his probation related to his conviction for risk of injury to a child. Indeed, the terms of his probation prohibit him from having contact with C until 2002. Finally, we note that the court also made the findings required by General Statutes (Rev. to 1997) § 17a-112 (e).[8] We conclude, therefore,

---

[8] General Statutes (Rev. to 1997) § 17a-112 (e), now (d), provides: "Except in the case where termination is based on consent, in determining whether to terminate parental rights under this section, the court shall consider and shall make written findings regarding: (1) The timeliness, nature and extent of services offered, provided and made available to the parent and the child by an agency to facilitate the reunion of the child with the parent; (2) whether the Department of Children and Families has made reasonable efforts to reunite the family pursuant to the federal Adoption Assistance and Child Welfare Act of 1980, as amended; (3) the terms of any applicable court order entered into and agreed upon by any individual or agency and the parent, and the extent to which all parties have fulfilled their obligations under such order; (4) the feelings and emotional ties of the child with respect to his parents, any guardian of his person and any person who has exercised physical care, custody or control of the child for at least one year and with whom the child has developed significant emotional ties; (5) the age of the child; (6) the efforts the parent has made to adjust his circumstances, conduct, or conditions to make it in the best interest of the child to return him to his home in the foreseeable future, including, but not limited to, (A) the extent to which the parent has maintained contact with the child as part of an effort to reunite the child with the parent, provided the court may give weight to incidental visitations, communications or contributions and (B) the maintenance of regular contact or communication with the

that the court's finding by clear and convincing evidence that D had failed to rehabilitate himself was not clearly erroneous.

B

D's second claim is that the trial court improperly found that he had committed an act of omission or commission regarding the welfare of C.

General Statutes (Rev. to 1997) § 17a-112 (c) provides in relevant part: "The Superior Court, upon hearing and notice as provided in sections 45a-716 and 45a-717, may grant a petition filed pursuant to this section if it finds by clear and convincing evidence . . . (3) that . . . (C) the child has been denied, by reason of an act or acts of parental commission or omission, the care, guidance or control necessary for his physical, educational, moral or emotional well-being. . . ."

The crux of D's claim is that there was insufficient evidence to support the court's finding that D had sexually abused C. D bases his claim on the conflicting testimony of his expert witness and the department's expert witness. He takes exception to the fact that the court chose to believe the department's expert witness rather than his expert.

"The testimony of professionals is given great weight in parental termination proceedings." *In re Michael M.*, 29 Conn. App. 112, 127 n.12, 614 A.2d 832 (1992). "It is well established that [i]n a case tried before a court, the trial judge is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony. *Kimberly-Clark Corporation* v. *Dubno*, 204 Conn. 137,

guardian or other custodian of the child; and (7) the extent to which a parent has been prevented from maintaining a meaningful relationship with the child by the unreasonable act or conduct of the other parent of the child, or the unreasonable act of any other person or by the economic circumstances of the parent."

153, 527 A.2d 679 (1987). The credibility and the weight of expert testimony is judged by the same standard, and the trial court is privileged to adopt whatever testimony he reasonably believes to be credible. . . . *Transportation Plaza Associates* v. *Powers*, 203 Conn. 364, 378, 525 A.2d 68 (1987). On appeal, we do not retry the facts or pass on the credibility of witnesses. *Nor'easter Group, Inc.* v. *Colossale Concrete, Inc.*, 207 Conn. 468, 473, 542 A.2d 692 (1988)." (Internal quotation marks omitted.) *Torres* v. *Waterbury*, 249 Conn. 110, 123, 733 A.2d 817 (1999). "It is the quintessential function of the fact finder to reject or accept certain evidence, and to believe or disbelieve any expert testimony. *State* v. *Blades*, 225 Conn. 609, 629, 626 A.2d 273 (1993). The trier may accept or reject, in whole or in part, the testimony of an expert offered by one party or the other. *Smith* v. *Smith*, 183 Conn. 121, 123, 438 A.2d 842 (1981); *Richard* v. *A. Waldman & Sons, Inc.*, 155 Conn. 343, 348, 232 A.2d 307 (1967)." *Champagne* v. *Champagne*, 54 Conn. App. 321, 324, 734 A.2d 1048 (1999).

In its memorandum of decision, the court went to great lengths to review the testimony of the expert witnesses. The principal issue addressed by D's expert was the manner in which and the number of times C was interviewed. Although the court acknowledged the criticism offered by D's expert, it properly noted that there is no recognized and accepted protocol for questioning victims of sexual abuse that is binding on the court in termination decisions. The court found that the criticism offered by D's expert concerning the accuracy of C's reporting was speculative and that her concerns derived from the reporting procedures that were used to obtain information from the children.

The court explicitly set forth its reason for choosing to believe the testimony of the department's expert witness. The court found that C had been sexually

abused by D because the department's expert testified that C's descriptions of abuse were articulate and that she was able to make distinctions between what her maternal uncle did to her and what D did to her. As the court noted, "[T]here is no legal distinction between direct and circumstantial evidence so far as probative force is concerned. . . . [I]t is the right and the duty of the [trier of fact] to draw reasonable and logical inferences from the evidence. . . . In considering the evidence introduced in a case, [triers of fact] are not required to leave common sense at the courtroom door . . . nor are they expected to lay aside matters of common knowledge or their own observations and experience of the affairs of life, but, on the contrary, to apply them to the facts in hand, to the end that their action may be intelligent and their conclusions correct." (Citations omitted; internal quotation marks omitted.) *State* v. *Chapman*, 46 Conn. App. 24, 34–35, 698 A.2d 347, cert. denied, 243 Conn. 947, 704 A.2d 800 (1997), cert. denied, 523 U.S. 1063, 118 S. Ct. 1393, 140 L. Ed. 2d 652 (1998).

For the foregoing reasons, we conclude that there was clear and convincing evidence that permitted the court to find that D, in sexually abusing C, had committed acts that denied C necessary care, guidance and control.

C

D's final claim is that the trial court improperly found that termination of his parental rights was in C's best interest.

The court found that C was flourishing in her current foster home. She was performing well in school, was a motivated student and with continued counseling, her troublesome behaviors had lessened. C was happy in her placement and wanted to remain there. On the basis of the testimony of several of C's treatment providers

and the department's expert witness, the court found that the child's need for permanency was urgent. Her present foster parents had expressed a desire to adopt C. The court, therefore, found that D's parental rights in C should be terminated. As previously noted, the court found that the department had offered reasonable and appropriate reunification and rehabilitative services to D. Therefore, on the basis of our review of the record and briefs, and the parties' oral arguments, we cannot say that the court's findings were clearly erroneous.

That portion of the appeal concerning the termination of parental rights with respect to J is dismissed. The judgment terminating parental rights as to C is affirmed.

In this opinion the other judges concurred.