STATE OF CONNECTICUT *v.* JAMES EVANS
(15143)

Dupont, C. J., and Schaller and Daly, Js.

Argued December 12, 1996—officially released February 18, 1997

*Donald Dakers*, special public defender, for the appellant (defendant).

*Jo Anne Sulik*, deputy assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's

attorney, and *James G. Clark*, supervisory assistant state's attorney, for the appellee (state).

DALY, J. The defendant appeals from judgments of conviction rendered after a jury trial. The convictions stemmed from charges arising out of three cases involving different incidents and different victims, which cases were consolidated for trial. Each case related to one set of facts. In the first case, the jury found the defendant guilty of burglary in the third degree in violation of General Statutes § 53a-103 (a), kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2) (B), and robbery in the third degree in violation of General Statutes § 53a-136 (a). In the second case, the jury found the defendant guilty of burglary in the first degree in violation of General Statutes § 53a-101 (a) (2), kidnapping in the first degree in violation of § 53a-92 (a) (2) (B), assault in the second degree in violation of General Statutes § 53a-60 (a) (2), and robbery in the third degree in violation of § 53a-136 (a). In the third case, the jury found the defendant not guilty of burglary in the first degree in violation of § 53a-101 (a) (2), but guilty of the lesser included offense of burglary in the third degree and guilty of assault of a victim sixty or older in the second degree in violation of § 53a-60b (a), and robbery in the third degree in violation of § 53a-136 (a).

The defendant claims that the trial court improperly (1) found sufficient evidence to sustain the conviction for robbery in the third degree in the first case, (2) admitted into evidence the tape recording of the 911 call in the second case, (3) permitted the identification of the color photograph in the second case, (4) infringed upon the defendant's right against self-incrimination by ordering him to display his teeth in the presence of the jury in the second case, and (5) ordered such display in the second case knowing that the defendant would refuse to comply.[1]

---

[1] The issue involving the joinder of these cases for trial was withdrawn at oral argument.

The jury reasonably could have found the following facts. In the first case, at about 4:30 p.m. on July 20, 1994, the defendant entered the premises at 5 Mueller Drive in Hamden. The female occupant was upstairs taking a shower and two female guests, Michelle Onofrio and Gina Jurado, were in the downstairs bedroom when the defendant entered the bedroom and demanded money. When both young women denied having any money, the defendant grabbed one of them and forced her to unscrew the wires to the videocassette recorder (VCR) and Nintendo game in the bedroom. The defendant demanded that they accompany him and pushed them upstairs to another bedroom, where he took jewelry. The defendant then went downstairs to the living room where he took another VCR. Finally, the defendant gathered the items he had taken in the kitchen and left the premises with the items. The two women ran to the bathroom and informed the occupant of what had transpired, and the police were notified.

In the second case, at about 6 p.m. on August 24, 1994, the victim was alone in her home at 559 Woodin Street in Hamden, when the defendant came to her door and stated that the victim's husband had hired him to do some work on the premises. Realizing that the story was fictitious, she immediately closed and bolted the door, ran to the kitchen telephone and dialed 911. Meanwhile, the defendant ran around to the kitchen door, kicked it in, entered the home and tried to wrestle the telephone from her hand. When she would not relinquish it, he bit her hand and punched her in the face. While she continued to clutch the receiver, he ripped the telephone base from the wall and hit her in the eye, face and left shoulder with it. He then knocked her to the floor and continued to beat her. As she struggled to get away, he knocked her to the floor again and choked her. She managed to elude him and ran for the telephone in the family room. The defendant threatened

her with bodily harm and ordered her to stop screaming. He knocked the telephone to the floor, dragged her back through the kitchen into the living room and out the front door, then released her and ran away with her pocketbook. When the Hamden police arrived, the victim described her assailant, particularly noting that he had distinctive front teeth, which were "chipped, almost evenly, so that it looks almost like a triangle."

A week after the incident, the victim identified the defendant's photograph from an array of eight black and white photographs at the Hamden police station. She asked if any color photographs were available and was taken to the New Haven police station, where she was shown four color photographs of the defendant taken at different times. She identified the fourth photograph, but failed to identify the first three. She later identified the defendant in court. The victim still suffers from injuries to her hip and shoulder incurred during the attack by the defendant.

In the third case, at about 11 p.m. on August 1, 1994, the defendant forced his way into the apartment of an eighty-nine year old woman. He grabbed her from behind and forced her to walk through her apartment with him, keeping his hand over her mouth while he looked for items to steal. He took five dollars in quarters from a cedar box on her dresser and demanded that she surrender two rings from her fingers, threatening to remove them by force if she did not comply. Although the victim was unable to identify the robber, two fingerprints found on the cedar box matched the defendant's fingerprints obtained during a previous arrest.

I

In the first case, the defendant was convicted of, inter alia, robbery in the third degree in violation of § 53a-136. Section 53a-136 (a) provides that "[a] person is guilty of robbery in the third degree when he commits

robbery as defined in section 53a-133." Section 53a-133 provides: "A person commits robbery when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person for the purpose of: (1) Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or (2) compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny." Thus, a robbery occurs when the accused uses or threatens the immediate use of physical force for the purpose of committing a larceny. Proof of simple larceny requires proof of a taking of property with the intent to deprive the owner of possession permanently. *In re Juvenile Appeal (84-4)*, 1 Conn. App. 642, 645, 474 A.2d 485 (1984).

The defendant claims that because the information alleged a robbery of two individuals, Onofrio and Jurado, the state was required to prove that both Onofrio and Jurado were robbed. He claims that because Jurado was upstairs in the shower during the robbery, and there was no confrontation between the defendant and Jurado, she was not robbed and, therefore, he should be acquitted of this count. We disagree.

This issue was raised in *State* v. *Kyles*, 221 Conn. 643, 650, 607 A.2d 355 (1992). In that case, the defendant argued that although "the state could have limited [the count] by charging the defendant with a robbery upon only one specific person, the state gratuitously added elements of proving a total of at least three separate robberies" committed against two unspecified persons and one named person. (Internal quotation marks omitted.) Id. "Since there was no evidence presented that [the named person] was robbed, the defendant [claimed] that the state failed to prove that the defendant committed the robbery in the particular manner

described." Id., 650–51. Our Supreme Court disagreed, holding that because the state had charged the defendant with only one count of robbery in the first degree it "was only required to prove that one person was robbed." Id., 651. The court pointed out that the state can "charge a separate robbery count for each and every robbery of each and every person." Id.

There is no question that "the state is limited to proving that the defendant has committed the offense in substantially the manner described" in the information. (Internal quotation marks omitted.) *State* v. *Newton,* 8 Conn. App. 528, 532, 513 A.2d 1261 (1986). "The inclusion in the state's pleading of additional details concerning the offense," however, "does not make [those additional details] essential elements of the crime . . . ." *State* v. *Morrill,* 197 Conn. 507, 551, 498 A.2d 76 (1985). Because the defendant was charged with only one count of robbery, and it was proved that he had committed a robbery of one individual, his conviction of one count of robbery was proper. *State* v. *Kyles,* supra, 221 Conn. 651.

II

The defendant next claims that the trial court improperly permitted into evidence in the second case the tape recording of the 911 call that the victim made to the Hamden police department when the intruder entered her home, and the return call from the police to her home, which consisted entirely of the victim screaming. The trial court listened to the tape outside the presence of the jury and determined that the evidence was relevant and that its probative value outweighed any prejudicial effect.

The defendant claims that the 911 recording was irrelevant and, in the alternative, that even if it was relevant, its prejudicial effect outweighed its probative value. The state argues that the 911 recording is relevant because

it confirms "that the initial report was made from a telephone located at that address," that "it tends to establish that a violent crime occurred and that it was still in progress at 5:57 p.m., when the dispatcher returned the call, that the screaming is relevant to the defendant's intent, that the jury could reasonably have inferred that the screaming was a result of the infliction of physical injury, that the assailant knew he was causing physical injury, and that he continued in that conduct." Further, the state claims that the 911 recording "gave the jury additional information from which to find that physical force was used," that it "verifies the length of time that the defendant was in the house," which is relevant to the charge of kidnapping, that, "[f]rom her screaming, the jury could infer that she was not at liberty to leave," that "the length of time also is relevant to [the victim's] identification of the defendant," that "the recording shows how long [the victim] was able to observe her attacker," and finally, that the 911 tape "established the violent nature of the assault."

"Relevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue. . . . [E]vidence need not exclude all other possibilities [to be relevant]; it is sufficient if it tends to support the conclusion [for which it is offered], even to a slight degree. . . . [T]he fact that evidence is susceptible of different explanations or would support various inferences does not affect its admissibility, although it obviously bears upon its weight. So long as the evidence may reasonably be construed in such a manner that it would be relevant, it is admissible. . . . *State* v. *Sauris*, 227 Conn. 389, 406–407, 631 A.2d 238 (1993)." (Internal quotation marks omitted.) *State* v. *Bruno*, 236 Conn. 514, 549, 673 A.2d 1117 (1996).

"We have previously outlined four situations where prejudice to the defendant could outweigh the probative

value of evidence. These are: (1) where the facts offered may unduly arouse the jury's emotions, hostility or sympathy, (2) where the proof and answering evidence it provokes may create a side issue that will unduly distract the jury from the main issues, (3) where the evidence offered and the counterproof will consume an undue amount of time, and (4) where the defendant, having no reasonable ground to anticipate the evidence, is unfairly surprised and unprepared to meet it. . . . *State* v. *Greene*, 209 Conn. 458, 478–79, 551 A.2d 1231 (1988). We have also noted, however, that ultimately, [a] trial court has broad discretion in determining whether the probative value of proffered evidence is outweighed by the prejudice that is likely to result from its admission. . . . We will not overturn its decision absent an abuse of discretion. . . . *State* v. *McGraw*, 204 Conn. 441, 449–50, 528 A.2d 821 (1987)." (Internal quotation marks omitted.) *State* v. *Prioleau*, 235 Conn. 274, 307, 664 A.2d 743 (1995).

"Because of the inherent difficulties in weighing these considerations against the need for relevant evidence, the resolution of this determination has been traditionally entrusted to the trial court. . . . Every reasonable presumption must be given in favor of the correctness of the court's ruling, and reversal will ensue only where an abuse of discretion is manifest or where injustice appears to have been done. . . . Prejudice is not measured by the significance of the evidence which is relevant but by the impact of that which is extraneous." (Citations omitted; internal quotation marks omitted.) *State* v. *Saraceno*, 15 Conn. App. 222, 249–50, 545 A.2d 1116, cert. denied, 209 Conn. 823, 824, 552 A.2d 431, 432 (1988).

In considering whether the trial court's admission of allegedly inflammatory photographic evidence was proper, our Supreme Court in *State* v. *Walker*, 206 Conn. 300, 314–15, 537 A.2d 1021 (1988), stated: "The princi-

ples governing the admission of potentially inflammatory photographic evidence are clear. As this court has stated on a number of occasions, we adhere to the general rule that photographs which have a reasonable tendency to prove or disprove a material fact in issue or shed some light upon some material inquiry are not rendered inadmissible simply because they may be characterized as gruesome. . . . When, however, an initial determination is made by the trial court that such photographs may have the tendency to prejudice or inflame the jury, the admissibility of such evidence is dependent upon the trial court's determination as to whether their value as evidence outweighs their possible prejudicial effect. . . . Since the trial court exercises its broad discretion in such circumstances, its determination will not be disturbed on appeal unless a clear abuse of that discretion is shown. *State* v. *Piskorski*, 177 Conn. 677, 700–701, 419 A.2d 866, cert. denied, 444 U.S. 935, 100 S. Ct. 283, 62 L. Ed. 2d 194 (1979); see *State* v. *DeJesus*, 194 Conn. 376, 381–82, 481 A.2d 1277 (1984); *State* v. *Haskins*, 188 Conn. 432, 452, 450 A.2d 828 (1982); *State* v. *Smith*, 174 Conn. 118, 122–23, 384 A.2d 347 (1977). *State* v. *Falcon*, 196 Conn. 557, 565–66, 494 A.2d 1190 (1985)." (Internal quotation marks omitted.)

"[T]he prosecution, with its burden of establishing guilt beyond a reasonable doubt, is not to be denied the right to prove every essential element of the crime by the most convincing evidence it is able to produce. *State* v. *Smith*, 185 Conn. 63, 88, 441 A.2d 84 (1981), quoting *State* v. *Piskorski*, supra, [177 Conn. 701–702]. The trial court did not abuse its discretion in admitting the photographs." (Internal quotation marks omitted.) *State* v. *Walker*, supra, 206 Conn. 315. We conclude that the same rationale applies here and that the trial court did not abuse its discretion in admitting the entire 911 tape.

## III

The defendant next claims that, in the second case, the trial court improperly permitted testimony as to the pretrial identification of the defendant from a color photograph at the New Haven police station because the procedure used was unnecessarily suggestive and, therefore, violative of his due process rights. The victim identified the defendant from an array of eight black and white photographs of black males shown to her by Detective Joseph Murray on September 2, 1994, approximately one week after the August 24, 1994 incident. She testified that although she had no doubt that the defendant, whom she identified from a photographic array at the Hamden police station, was the intruder who attacked and robbed her, she felt that "the color wasn't right . . . [and that it] looked like an old, old photograph that had yellowed. So, the color wasn't right. [She] wanted to make sure that this was positively the man." She, therefore, requested to see a color photograph of the defendant.

Murray took the victim to the New Haven police station, where she was shown four color photographs of the defendant on a computer screen in chronological order. She failed to identify the defendant in the first three photographs, but made a positive identification of the fourth photograph—the most recent—dated June 2, 1994. During the trial, the victim identified all four color photographs as pictures of the defendant. The defendant moved unsuccessfully to have both the Hamden and New Haven photograph identifications suppressed as being unduly suggestive and in violation of his state and federal constitutional rights to due process. On appeal, the defendant has abandoned any claim that the Hamden police procedures were unduly suggestive and any challenge to the in-court identification; see *State* v. *Hinton*, 196 Conn. 289, 291 n.2, 493 A.2d 836

(1985); and claims only that the procedure used at the New Haven police station was unduly suggestive.

"We note at the onset that [b]ecause the issue of the reliability of an identification involves the constitutional rights of an accused . . . we are obliged to examine the record scrupulously to determine whether the facts found are adequately supported by the evidence and whether the court's ultimate inference of reliability was reasonable. . . . *State* v. *Howard,* 221 Conn. 447, 454, 604 A.2d 1294 (1992). . . . *State* v. *Figueroa,* 235 Conn. 145, 155, 665 A.2d 63 (1995). This court has adopted the federal standard set forth in *Neil* v. *Biggers,* [409 U.S. 188, 199–200, 93 S. Ct. 375, 34 L. Ed. 2d 401 (1972)], for determining whether a pretrial identification procedure violated a defendant's due process rights. [T]he required inquiry is made on an ad hoc basis and is two-pronged: first, it must be determined whether the identification procedure was unnecessarily suggestive; and second, if it is found to have been so, it must be determined whether the identification was nevertheless reliable based on an examination of the totality of the circumstances. *State* v. *Tatum,* 219 Conn. 721, 727, 595 A.2d 322 (1991), quoting *State* v. *Theriault,* 182 Conn. 366, 371–72, 438 A.2d 432 (1980); see also *State* v. *Ramsundar,* 204 Conn. 4, 10, 526 A.2d 1311, cert. denied, 484 U.S. 955, 108 S. Ct. 348, 98 L. Ed. 2d 374 (1987). To prevail in his claim, the defendant must demonstrate that the trial court erred in both of its determinations regarding suggestiveness and reliability of identifications in the totality of the circumstances. . . . *State* v. *Hinton,* [196 Conn. 289, 293, 493 A.2d 836 (1985)]. *State* v. *Mayette,* 204 Conn. 571, 581, 529 A.2d 673 (1987). *State* v. *Pollitt,* 205 Conn. 132, 162, 531 A.2d 125 (1987). . . . *State* v. *Wooten,* 227 Conn. 677, 685, 631 A.2d 271 (1993). . . . *State* v. *Figueroa,* supra, 155–56. An identification procedure is unnecessarily suggestive only if it gives rise to a very substantial likelihood of

irreparable misidentification. *State* v. *White*, 229 Conn. 125, 161–62, 640 A.2d 572 (1994). If the procedures used to identify the defendant were not unnecessarily suggestive, we need not independently analyze whether the identification was reliable. *State* v. *Williams*, [203 Conn. 159, 173–74, 523 A.2d 1284 (1987)]; *State* v. *Miller*, [202 Conn. 463, 470, 522 A.2d 249 (1987)]; *State* v. *Amarillo*, 198 Conn. 285, 294, 503 A.2d 146 (1986). *State* v. *Boscarino*, 204 Conn. 714, 726, 529 A.2d 1260 (1987)." (Internal quotation marks omitted.) *State* v. *Taylor*, 239 Conn. 481, 498–99, 687 A.2d 489 (1996). We conclude that the identification procedure in question was neither unnecessarily suggestive nor unreliable under all of the circumstances.

Our Supreme Court in *State* v. *Hinton*, supra, 196 Conn. 294, stated: "While we have recognized that pictorial recurrence can be suggestive in that it increases the risk of misidentification . . . the initial identification in this case was made with such a high degree of assurance that the second identification involving a more recent photograph could only have benefitted the defendant." (Citations omitted; internal quotation marks omitted.) Similarly, in the present case, the victim was certain of her identification of the defendant from the array of photographs that she viewed at the Hamden police station. Taking care to be absolutely accurate, however, she requested to see color photographs of the defendant to be sure that the skin tone of the defendant was the same as that of the robber. We conclude that the presentation of the color photographs to the victim did not, under the totality of the circumstances, constitute an impermissibly suggestive pretrial identification procedure.

Nevertheless, assuming arguendo that the display was unnecessarily suggestive, we will consider whether, on the basis of an examination of the totality of the circumstances, the identification was nevertheless

reliable. *State* v. *Ramsundar*, 204 Conn. 4, 10, 526 A.2d 1311, cert. denied, 484 U.S. 955, 108 S. Ct. 348, 98 L. Ed. 2d 374 (1987). We conclude that it was.

The factors to be considered in determining the reliability of an identification subsequent to a suggestive identification procedure include the opportunity of the witness to view the criminal at the time of the crime. "[T]he witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation and the time between the crime and confrontation . . . [are] to be weighed [against] the corrupting effect of the suggestive identification itself." (Internal quotation marks omitted.) *State* v. *Evans*, 200 Conn. 350, 356, 511 A.2d 1006 (1986).

In this case, the victim had ample opportunity to view the intruder during the robbery. She observed him for several minutes as he dragged her from room to room, she was within eight to nine inches of him, he was on top of her while she was on the floor, it was daylight and the rooms were relatively brightly lit, and she saw him both inside her house and in the front yard. Where a witness' view of a defendant was brief, "a good hard look will pass muster even if it occurs during a fleeting glance." (Internal quotation marks omitted.) *State* v. *Cubano*, 9 Conn. App. 548, 553–54, 520 A.2d 250 (1987). In this case, the victim had an opportunity for "a good hard look" while she was being beaten by the defendant, and she gave a detailed description. Her initial description of her assailant matched the defendant: he was a black male in his early twenties, approximately 5 feet 7 inches tall, of medium build, with short hair, very dark skin, broad nose and chipped front teeth. In making the identification of the defendant from the fourth color photograph at the New Haven police station, the victim was "100 per cent certain" that he was her assailant. Only a short time had elapsed between the attack on

August 24, 1994, and her identification of the defendant on September 2, 1994. "[A]lthough [in considering challenges to identification evidence] we examine the legal question of reliability with exceptionally close scrutiny and defer less than we normally do to the related fact-finding of the trial court," we conclude that, under all of the circumstances, the trial court could reasonably have found that any "corrupting influence of the [identification procedure] was minimal and that [it] did not result in a very substantial likelihood of irreparable misidentification, and that the [identification was] sufficiently reliable to be considered by the jury." (Internal quotation marks omitted.) *State* v. *Ramsundar*, supra, 204 Conn. 12–13.

## IV

The defendant next claims that the trial court, in ordering him to display his teeth in the presence of the jury, violated his privilege against self-incrimination under article first, § 8, of the Connecticut constitution. He seeks review of this claim under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989). We conclude that this claim is not of constitutional magnitude and that it, therefore, fails to satisfy the second prong of *Golding*.

The constitution of Connecticut, article first, § 8, provides in pertinent part: "No person shall be compelled to give evidence against himself." Our Supreme Court discussed the meaning of that provision in detail in *State* v. *Asherman*, 193 Conn. 695, 713, 478 A.2d 227 (1984), cert. denied, 470 U.S. 1050, 105 S. Ct. 1749, 84 L. Ed. 2d 814 (1985). "Judicial review of an asserted invasion of the protection against compelled self-incrimination must focus on whether the state (1) actually compelled the complainant to disclose (2) *testimonial* communications (3) which tended to incriminate him." (Emphasis in original; internal quotation marks omitted.) Id., 712–13. "[C]ompulsion which makes a

suspect or accused the source of real or physical evidence does not violate a person's constitutional rights as it is not such as compels communications or testimony." (Internal quotation marks omitted.) *State* v. *Campfield*, 44 Conn. App. 6, 16, 687 A.2d 903 (1996).

Our Supreme Court held in *State* v. *Asherman*, supra, 193 Conn. 711–15, that the privilege against self-incrimination under article first, § 8, of the Connecticut constitution applies only to testimonial evidence. In particular, the court held that compelling a defendant to submit to the taking of a dental impression did not compel testimonial evidence and did not violate article first, § 8, of the Connecticut constitution. Id., 715. Similarly, compelling an accused to drop his pants to display scratches on his thigh would not violate his constitutional rights. Id., 713–14.

The defendant claims that the present case is distinguishable from *Asherman* because in *Asherman* the trial court ordered the defendant to submit to an examination prior to trial, which would produce evidence at trial, rather than ordering a defendant to provide such evidence in the presence of the jury. The defendant claims that when a defendant is ordered to perform an act in the presence of the jury, that act becomes testimonial in nature, but he offers no authority for that proposition. Some federal courts have rejected that argument. See *United States* v. *Williams*, 704 F.3d 315 (6th Cir.), cert. denied, 464 U.S. 991, 104 S. Ct. 481, 78 L. Ed. 2d 679 (1983); *United States* v. *Roberts*, 481 F.2d 892, 894 (5th Cir. 1973). Moreover, nothing in the court's discussion or reasoning in *Asherman* would support the defendant's argument.

We conclude that because the order to display one's teeth, whether prior to or at trial, does not involve communications or testimony, the defendant's claim is

not of constitutional magnitude and does not satisfy the second prong of *Golding*.

## V

Finally, the defendant maintains that the trial court's order to the defendant to display his front teeth to the jury constituted an abuse of discretion because the court was aware that the defendant would refuse to comply and that other evidence would be presented concerning the condition of the defendant's teeth. Although the defendant seeks review of this claim under *Golding*, he makes no argument that there is a constitutional deprivation in this claim of abuse of discretion. The second prong of *Golding*, therefore, does not allow us to review the claim.

The judgments are affirmed.

In this opinion the other judges concurred.