# STATE OF CONNECTICUT *v.* KENNETH HENTON
## (AC 17824)

Schaller, Sullivan and Daly, Js.

Argued June 9—officially released September 29, 1998

*Lawrence S. Dressler*, special public defender, for the appellant (defendant).

*Richard F. Jacobson*, supervisory assistant state's attorney, with whom, on the brief, was *Gerard Eisenman*, assistant state's attorney, for the appellee (state).

*Opinion*

SULLIVAN, J. The defendant appeals from the judgment of conviction, rendered after a trial to the court, of robbery in the first degree in violation of General Statutes § 53a-134, the commission of a class A, B or C felony with a firearm in violation of General Statutes § 53-202k and being a persistent dangerous felony offender in violation of General Statutes § 53a-40. The defendant claims that the trial court improperly (1)

denied his motion for a new trial,[1] (2) found that he made a voluntary, knowing and intelligent waiver of his right to a jury trial, (3) found that the evidence was sufficient to convict him of being a persistent dangerous felony offender, (4) admitted the pretrial identification of the defendant, (5) failed to refer the case to a three judge panel pursuant to General Statutes § 54-82 (b),[2] (6) violated the defendant's constitutional right against double jeopardy by convicting him of both robbery in the first degree and the commission of a class A, B or C felony with a firearm and (7) found that the evidence was sufficient to convict the defendant of robbery in the first degree. We reverse the judgment in part and remand the case with direction to vacate the defendant's conviction under § 53-202k.

The following facts are relevant to the resolution of this appeal. At about 9 p.m. on August 27, 1995, Victoria Hudson went to meet friends in a bar in Bridgeport. When she did not find her friends there, she left. Outside of the bar, Hudson was approached by a man she recognized from high school eighteen years earlier, whose name she could not remember. The man, later identified as the defendant, asked Hudson for a ride to the east side of Bridgeport. Hudson agreed to give him a ride and drove him to the Pembroke Street exit on Interstate 95. The defendant then asked her to turn onto a dead-end street, but Hudson became suspicious and pulled over on Pembroke Street. The defendant brandished a gun and threatened to shoot her in the head if she did not give him all of her money. Hudson handed him all of the money in her pocket, approximately forty to fifty dollars, at which point the defendant left the car and Hudson drove to her sister's house.

[1] Although the defendant titled this pleading a "motion to set aside the verdict," the trial court treated it as a motion for a new trial pursuant to Practice Book § 42-53.

[2] The defendant's sixth claim in his brief is closely related to his fifth claim, and we address them together in part V of this opinion.

The following morning, Hudson called the police from work to report the incident. She went to the Bridgeport police department the next day and looked at photographs of suspects fitting the defendant's description, but was not able to identify her assailant at that time. A few days later, while she was describing the incident to her friends, they suggested the defendant as a possible suspect. She provided the defendant's name to the police department and was called back to the station shortly thereafter to look at an array of six black and white photographs. Detective Robert Sapiro testified that Hudson pointed out the defendant's photograph in the array, but was not absolutely certain it was of the defendant because the photographs were old. On December 18, 1995, however, Hudson looked at another array of six recent color photographs and immediately identified the defendant as the man who had robbed her.

After waiving his right to a jury trial, the defendant was tried by the trial court and convicted of robbery in the first degree, the commission of a class A, B or C felony with a firearm and being a persistent dangerous felony offender. The defendant filed a motion for a new trial, claiming that a conflict existed between him and his defense counsel. The court denied the defendant's motion and sentenced him to fifteen years as a persistent dangerous felony offender and fifteen years on the robbery in the first degree count to be served concurrently.[3] In addition, the defendant was sentenced to five

---

[3] It should be noted that during sentencing on January 31, 1997, the trial court sentenced the defendant to fifteen years for the persistent dangerous felony offender count and five consecutive years for the commission of a class A, B or C felony with a firearm count, for a total of twenty years. The trial court, however, failed to sentence him on the robbery in the first degree count. In the court's judgment written on January 31, 1997, however, the defendant was sentenced to fifteen years for the robbery in the first degree count and five consecutive years for the firearm count, but the trial court failed to sentence him to fifteen years on the persistent dangerous felony offender count. Since both sentences totaled twenty years, it appears that

years for the firearm count, to be served consecutively, for a total of twenty years. This appeal followed.

I

The defendant's first claim is that his sixth amendment right to effective assistance of counsel was violated by the trial court's denial of his motion for a new trial, which alleged a conflict of interest between the defendant and his counsel. The defendant did not properly preserve this claim at trial and now seeks review of it under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).

In *Golding*, our Supreme Court held that "a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." Id. " 'The first two questions relate to whether a defendant's claim is reviewable, and the last two relate to the substance of the actual review.' *State* v. *Newton*, 8 Conn. App. 528, 531, 513 A.2d 1261 (1986)." *State* v. *Shinn*, 47 Conn. App. 401, 409, 704 A.2d 816 (1997), cert. denied, 244 Conn. 913, 914, 713 A.2d 832, 833 (1998). Since the record is adequate for review and the defendant has alleged a claim of constitutional magnitude, we will review it on appeal.

the trial court intended to sentence the defendant to fifteen years on both the persistent dangerous felony offender and the robbery in the first degree counts, to be served concurrently, and five consecutive years on the firearm count.

"Our state and federal constitutions guarantee a criminal defendant the right to assistance of counsel. U.S. Const., amend. VI; Conn. Const., art. I, § 8. As an adjunct to this right, a criminal defendant is entitled to be represented by an attorney free from conflicts of interest." (Internal quotation marks omitted.) *State* v. *Webb*, 238 Conn. 389, 417, 680 A.2d 147 (1996). "This right requires that the assistance of counsel be 'untrammeled and unimpaired by a court order requiring that one lawyer shall simultaneously represent conflicting interests.'" *State* v. *Martin*, 201 Conn. 74, 78, 513 A.2d 116 (1986), quoting *Glasser* v. *United States*, 315 U.S. 60, 70, 62 S. Ct. 457, 86 L. Ed. 680 (1942).

As our case law demonstrates, "the right to conflict-free representation typically is implicated in cases involving representation of criminal codefendants by a single attorney." *State* v. *Williams*, 203 Conn. 159, 167, 523 A.2d 1284 (1987). It has also been implicated, however, in cases where an attorney's ability to represent his client effectively is impaired because the client's interests conflict with the interests of an attorney's other clients or third parties. See, e.g., *Wood* v. *Georgia*, 450 U.S. 261, 267, 101 S. Ct. 1097, 67 L. Ed. 2d 220 (1981) (potential conflict between defendants' interest and interest of their employer who paid for trial counsel); *United States* v. *Winkle*, 722 F.2d 605, 610 (10th Cir. 1983) (potential conflict because defendant's attorney previously represented government's key witness); *Ross* v. *Heyne*, 638 F.2d 979, 984–85 (7th Cir. 1980) (conflict because one attorney represented defendant while his law partner represented codefendants who testified for prosecution); *Matter of Darr*, 143 Cal. App. 3d 500, 510, 191 Cal. Rptr. 882 (1983) (conflict due to defense counsel's concurrent representation of defendant and key prosecution witness); *State* v. *Gonsalves*, 476 A.2d 108, 110 (R.I. 1984) (conflict because defense counsel previously represented individual who actually

committed crime for which defendant being tried). Thus, "[i]t is not representation of more than one client which deprives a defendant of his constitutional right to effective assistance of counsel, it is representation of *clients with adverse interests.*" (Emphasis added; internal quotation marks omitted.) *State* v. *Martin,* supra, 201 Conn. 81.

In the present case, the defendant claims that a conflict of interest arose because he and his defense counsel disagreed over whether the defendant should waive his right to a jury trial. The defendant does not assert, however, that his counsel's advice to elect a jury trial was for the benefit of another. See *Blakeney* v. *Commissioner of Correction,* 47 Conn. App. 568, 584–85, 706 A.2d 989, cert. denied, 244 Conn. 913, 713 A.2d 830 (1998). Nor does the defendant claim that his counsel was unable to represent him effectively because the defendant's interests conflicted with the interests of his counsel's other clients or third parties. See *State* v. *Martin,* supra, 201 Conn. 80–81. We conclude that what the defendant referred to as a "conflict of interest" between him and his trial counsel was, instead, merely a *disagreement* because it did not arise out of counsel's representation of clients with adverse interests. See id., 81. The trial court's denial of the defendant's motion for a new trial, therefore, was not in violation of his sixth amendment right to effective assistance of counsel.

## II

The defendant next claims that the trial court improperly found that he made an effective waiver of his right to a jury trial. The defendant concedes that this claim was not raised at trial and, thus, was not properly preserved. He now seeks review of it under the standards of *State* v. *Golding,* supra, 213 Conn. 239–40. We will

review the defendant's claim, as the record is adequate for review and the alleged violation is of constitutional magnitude because it involves his constitutional right to a jury trial. U.S. Const., art. III, § 2. We conclude, however, that the defendant has failed to show that the alleged violation clearly exists and clearly deprived him of a fair trial.

"The right to a jury trial in a criminal case is among those constitutional rights which are related to the procedure for the determination of guilt or innocence. The standard for an effective waiver of such a right is that it must be knowing and intelligent, as well as voluntary. . . . In determining whether this strict standard has been met, a court must inquire into the totality of the circumstances of each case." (Internal quotation marks omitted.) *State* v. *Chapman*, 46 Conn. App. 24, 30, 698 A.2d 347, cert. denied, 243 Conn. 947, 704 A.2d 800 (1997), cert. denied, 523 U.S. 1063, 118 S. Ct. 1393, 140 L. Ed. 2d 652 (1998). "The determination of whether there has been an intelligent waiver . . . must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." (Internal quotation marks omitted.) *State* v. *Schockley*, 188 Conn. 697, 707, 453 A.2d 441 (1982).

This case is governed by our decision in *State* v. *Tangari*, 44 Conn. App. 187, 193–94, 688 A.2d 1335, cert. denied, 241 Conn. 901, 693 A.2d 304, cert. denied, 522 U.S. 867, 118 S. Ct. 177, 139 L. Ed. 2d 118 (1997). In *Tangari*, we held that the defendant made a knowing, intelligent and voluntary waiver of her right to a jury trial because she was advised of her right to a jury trial in open court, was represented by competent counsel, discussed the waiver of a jury trial with her counsel and responded affirmatively when she was asked whether she understood that she was giving up the right to a jury trial by electing to be tried by the court.

Here, as in *Tangari*, the record demonstrates that the defendant was represented by competent counsel, was advised of his right to a jury trial in open court[4]

---

[4] The following colloquy between the trial court and the defendant occurred on September 26, 1996, before the defendant was tried on the robbery in the first degree and the firearm charges:

"Q. Mr. Henton, I want to ask you a few questions then before I accept this waiver, and the purpose of these questions is for me to determine that this is being done voluntarily by you and that no one is forcing you to do this or anything of that sort. So let me ask you these questions. First, Mr. Henton, how far through school did you go?

"A. Tenth grade, Your Honor . . . but I did require—I did complete a G.E.D.

\* \* \*

"Q. All right. Now you heard, Mr. Henton, [your counsel] just said that you want to waive a jury trial and have your case tried to the court before me, is that correct?

"A. Yes, Your Honor.

"Q. Okay. Now you know if I accept this waiver, you're giving up the right to have a jury determine the facts in this case, to determine your guilt or innocence in this case. You understand that?

"A. Yes, Your Honor.

"Q. Okay. And you know that during a court trial, I will determine the facts, which the jury normally does. I'll do that myself.

"A. Yes, Your Honor.

"Q. And you want me to do that?

"A. Yes, Your Honor.

"Q. Okay. Is anyone forcing you to do this, Mr. Henton?

"A. No, Your Honor.

\* \* \*

"Q. Okay. You've had enough time to think about this?

"A. Yes, Your Honor.

"Q. [Your counsel] said you had some conversations in the past about doing this, is that right?

"A. Yes, we have, Your Honor.

\* \* \*

"Q. All right. So you've made up your mind and it's final as far as you're concerned. This is what you want to do?

"A. Yes, I do, Your Honor.

\* \* \*

"Q. Do you have any questions at all about any rights you may be giving up by doing this or anything at all?

"A. Yes, Your Honor. As far as I understand my right, I—I would be giving up my right to jury trial, you know, by having a jury to decide, okay, and that would mean that I elected you, Your Honor, as a judge to determine.

and responded affirmatively when asked by the court whether he understood that he was giving up his right to a trial by jury.

Further, there is nothing that would indicate that the defendant was not of ordinary intelligence and educational background, and the choice of a trial by jury or by the court was fully discussed with him by his counsel. See *State* v. *Crump*, 201 Conn. 489, 504–505, 518 A.2d 378 (1986). We conclude, in light of the totality of the circumstances on the record, that the defendant waived his right to a jury trial and that his waiver was voluntary, knowing and intelligent.

### III

The defendant next claims that the trial court improperly found that there was sufficient evidence to convict him as a persistent dangerous felony offender in violation of § 53a-40. Specifically, the defendant asserts that the state failed to prove that he had been previously convicted of robbery in the first degree, as the second element of § 53a-40 requires. The defendant concedes that his trial counsel did not move for a judgment of acquittal at the end of the state's case or at the close of all of the evidence, and he therefore seeks review of this claim pursuant to *Golding*.

"Unpreserved sufficiency claims are reviewable on appeal because such claims implicate a defendant's federal constitutional right not to be convicted of a crime upon insufficient proof. See *State* v. *Adams*, 225 Conn. 270, 275–76 n.3, 623 A.2d 42 (1993)." *State* v. *Laws*, 37 Conn. App. 276, 281, 655 A.2d 1131, cert. denied, 234

"Q. That's right."

A similar exchange occurred on October 2, 1996, immediately prior to the defendant's trial on the persistent dangerous felony offender charge. The defendant again elected to waive his right to a jury trial after a thorough canvassing on this issue by the trial court and after the defendant was allowed several recesses to discuss his decision with his counsel.

Conn. 907, 659 A.2d 1210 (1995). "When reviewing suffi-ciency of the evidence claims, we impose a two part analysis. First, we construe the evidence in the light most favorable to sustaining the verdict. . . . Second, we determine whether, from that evidence and all the reasonable inferences which it yields, a [trier of fact] could reasonably have concluded that the defendant was guilty beyond a reasonable doubt. . . . *State* v. *Rivera*, 32 Conn. App. 193, 200–201, 628 A.2d 996, cert. denied, 227 Conn. 920, 632 A.2d 698 (1993)." (Internal quotation marks omitted.) *State* v. *Laws*, supra, 281.

In the present case, the state produced a certified copy of the December 22, 1983 judgment, sentencing the defendant on his conviction for robbery in the first degree, as proof of a prior felony conviction. In addition, the state offered the testimony of Detective Richard Herlihy of the Bridgeport police department. Herlihy is the head of the identification crime scene unit and maintains the fingerprints used by the department. After comparing a set of fingerprints taken following the defendant's arrest in 1983 for robbery in the first degree with a set taken following the defendant's arrest in 1996 for the crimes underlying this appeal, it was Herlihy's opinion that the fingerprints were identical.

Further, the trial court allowed Herlihy to take the defendant's fingerprints in court. Herlihy testified that he believed all three sets of fingerprints were from the defendant. The state also offered into evidence a copy of the defendant's uniform arrest report listing an arrest for robbery in the first degree and assault in the second degree in April, 1983, and the mittimus reflecting the defendant's commitment to state prison for the robbery conviction. Finally, Detective Joseph Sherbo of the Bridgeport police department testified that he arrested the defendant on April 8, 1983, for the robbery and assault charges listed on his uniform arrest report.

The defendant's claim is that without the testimony of Detective Michael Supple, who arrested the defendant on the robbery and assault charges in 1983 and took the defendant's fingerprints when he was arrested on those charges, the state's evidence was insufficient to prove the defendant's prior felony conviction pursuant to § 53a-40. This claim is without merit.

Our Supreme Court has stated that "[t]o prove a conviction, it is necessary to show it by the record of a valid, subsisting final judgment." *State* v. *Couture*, 151 Conn. 213, 219, 196 A.2d 113 (1963). Here, it is undisputed that the state offered into evidence the defendant's valid judgment of conviction for robbery in the first degree in 1983. The defendant, however, argues that without Supple's testimony, it is uncertain whether his fingerprints were mistakenly attached to the 1983 judgment form. The defendant has misunderstood *Couture* as requiring additional evidence to prove a prior conviction; rather, *Couture* provides that "[n]othing in § 53a-40 (a) *precludes* the state from offering probative evidence to clarify an official judgment of conviction in order to prove that the defendant is a second offender within the reach of the statute." (Emphasis added.) *State* v. *Fullwood*, 194 Conn. 573, 589, 484 A.2d 435 (1984). Because no such ambiguity existed regarding whether the defendant's prior conviction of robbery in the first degree put him within the reach of § 53a-40, the admission into evidence of the defendant's judgment of conviction for the 1983 robbery charge, alone, proved his prior felony conviction. See id.

We conclude that in construing the evidence in the light most favorable to sustaining the trial court's verdict, the trial court reasonably could have concluded that the state proved beyond a reasonable doubt all of the elements of the crime of being a persistent dangerous felony offender.

## IV

The defendant next claims that he was denied his right to due process of law when the trial court improperly admitted into evidence his pretrial identification, which he asserts was unnecessarily suggestive. We disagree.

"It is well settled that [i]n determining whether a pretrial identification procedure violated a defendant's due process rights, the required inquiry is made on an ad hoc basis and is two-pronged: first, it must be determined whether the identification procedure was unnecessarily suggestive; and second, if it is found to have been so, it must be determined whether the identification was nevertheless reliable based on an examination of the totality of the circumstances. . . . Generally, [t]he exclusion of evidence from the jury is . . . a drastic sanction, one that is limited to identification testimony which is manifestly suspect." (Internal quotation marks omitted.) *State* v. *Carter*, 47 Conn. App. 632, 638, 708 A.2d 213, cert. denied, 244 Conn. 909, 713 A.2d 828 (1998). "An identification procedure is unnecessarily suggestive only if it gives rise to a very substantial likelihood of irreparable misidentification." (Internal quotation marks omitted.) *State* v. *Evans*, 44 Conn. App. 307, 318–19, 689 A.2d 494, cert. denied, 240 Conn. 924, 692 A.2d 819 (1997).

In the present case, the defendant claims that his pretrial identification was unnecessarily suggestive for several reasons: (1) the second array of photographs was selected after Hudson provided the defendant's name to the police department; (2) Sapiro told Hudson that in identifying the defendant, she must "identify him 100 percent," indicating to her that the defendant's photograph was in the array; (3) Hudson failed to identify the defendant in the first two groups of photographs; and (4) when Sapiro asked Hudson to view the

last group of color photographs, he referred to them as "new" pictures, suggesting that the defendant had recently been arrested and enticing Hudson to identify the defendant, whom she recognized from high school, not from the robbery.

We disagree that these conditions made the pretrial identification unnecessarily suggestive. In the present case, the victim pointed to the defendant's picture in the second array of photographs, but failed to identify him with absolute certainty because the photographs were old. Sapiro later arranged for Hudson to view a third, more recent group of color photographs. From these she made a definite and immediate identification of the defendant.

We are also not convinced that Sapiro's instruction to Hudson that she would "have to identify him 100 percent," referring to the defendant, unnecessarily suggested which photograph in the group was of the defendant. Further, the transcript does not indicate that Sapiro referred to the third group of photographs as "new" when he showed them to Hudson, nor are we persuaded that this would have aided or enticed Hudson to identify the defendant's photograph from among the others, had it occurred.

Nevertheless, assuming arguendo that the pretrial identification procedure was unnecessarily suggestive, we will consider whether, under all of the circumstances, the identification was reliable. *State* v. *Ramsundar*, 204 Conn. 4, 10, 526 A.2d 1311, cert. denied, 484 U.S. 955, 108 S. Ct. 348, 98 L. Ed. 2d 374 (1987). "The factors to be considered in determining the reliability of an identification subsequent to a suggestive identification procedure include the opportunity of the witness to view the criminal at the time of the crime. [T]he witness' degree of attention, the accuracy of his prior

description of the criminal, the level of certainty demonstrated at the confrontation and the time between the crime and the confrontation . . . [are] to be weighed [against] the corrupting effect of the suggestive identification itself." (Internal quotation marks omitted.) *State* v. *Evans*, supra, 44 Conn. App. 320.

In this case, Hudson had ample opportunity to view her assailant before and during the robbery. She talked to him in a well lit area outside of the bar for several minutes and drove in her car with him for fifteen to twenty minutes before the robbery occurred. Finally, only four months had passed between the August 27, 1995 robbery and the identification on December 18, 1995. This time period is not so long as to render Hudson's identification unreliable. See *State* v. *Parker*, 197 Conn. 595, 600, 500 A.2d 551 (1985) (ten month period between identification and victim's viewing of assailant did not render identification unreliable). We conclude that, considering the totality of the circumstances, the pretrial identification was not unnecessarily suggestive and was sufficiently reliable to be considered by the trial court. See *State* v. *Ramsundar*, supra, 204 Conn. 12–13.

V

The defendant next claims that the trial court improperly failed to refer his case to a panel of three judges under § 54-82 (b). Specifically, he argues that this was a violation of his right to equal protection because § 54-82 (b) arbitrarily classifies criminal defendants for the purpose of entitling them to have their cases tried by a three judge panel on the basis of whether they have been charged with a crime for which they face the death penalty or life imprisonment.[5] The defendant did not

[5] General Statutes § 54-82 (b) provides in relevant part: "If the accused is charged with a crime punishable by death or imprisonment for life and elects to be tried by the court, the court shall be composed of three judges . . . ."

raise this claim at trial and, therefore, seeks review of his unpreserved claim under *Golding.* We will review the defendant's claim because the record is adequate for review and the alleged violation is of constitutional magnitude, as it involves his constitutional right to equal protection under the laws of this state. U.S. Const., amend. XIV; Conn. Const., art. I, § 20. Nevertheless, we conclude that the defendant has failed to show that the alleged violation clearly exists and clearly deprived him of a fair trial.

Having been charged with being a persistent dangerous felony offender with one prior felony conviction, the defendant faced a maximum sentence of forty years imprisonment. General Statutes § 53a-40 (f). The defendant argues, however, that he was effectively sentenced to life imprisonment because, according to actuarial data, he had a life expectancy of only thirty-seven and one-half years. It is the defendant's contention, therefore, that he was equally entitled to be tried by a three judge panel, since § 54-82 (b) entitles those who are charged with crimes for which they face life imprisonment to have their cases tried by such a panel. The defendant claims that § 54-82 (b) treats similarly situated criminal defendants differently for no rational basis, in violation of his right to equal protection.

"To implicate the equal protection clauses under the state and federal constitutions . . . it is necessary that the state statute in question, either on its face or in practice, treat persons standing in the same relation to it differently. . . . To determine whether a particular classification violates the guarantees of equal protection, the court must consider the character of the classification; the individual interests affected by the classification; and the governmental interests asserted in support of the classification." (Citations omitted;

internal quotation marks omitted.) *State* v. *Morales*, 240 Conn. 727, 738–39, 694 A.2d 758 (1997).

Life imprisonment is defined in Connecticut as a definite sentence of sixty years. General Statutes § 53a-35b. Although the defendant may have died during incarceration, had he been sentenced to forty years imprisonment, we cannot say that he faced a sentence of life imprisonment. The defendant, not having been sentenced to life imprisonment pursuant to § 53a-35b, would have had the possibility of freedom from incarceration before sixty years had passed. We conclude, therefore, that a criminal defendant facing a sentence of less than sixty years is not in a situation similar to that of a person who faces life imprisonment as defined by § 53a-35b. Accordingly, we determine that the defendant's equal protection right was not violated when he was not provided with the opportunity pursuant to § 54-82 (b) to have his case heard before a panel of three judges.

## VI

The defendant next claims that the trial court violated his constitutional right to be free of double jeopardy by convicting him of both robbery in the first degree and the commission of a class A, B or C felony with a firearm. The defendant did not raise this claim at trial and now seeks review of it under *Golding*. We will review the defendant's claim because the record is adequate for review and the alleged violation is of constitutional magnitude. Although we conclude that the defendant's claim fails the third prong of *Golding*, we agree that his separate conviction under § 53-202k should be vacated.

"A claim of double jeopardy which is adequately supported by the record is reviewable under the doctrine of *State* v. *Evans*, 165 Conn. 61, 327 A.2d 576 (1973)."

*State* v. *Williams*, 12 Conn. App. 225, 229, 530 A.2d 627 (1987). "The double jeopardy issue has previously been addressed by this court in *State* v. *Ingram*, 43 Conn. App. 801, 826, 687 A.2d 1279 (1996), cert. denied, 240 Conn. 908, 689 A.2d 472 (1997), in which we concluded that providing for sentence enhancement for crimes committed with a firearm [under § 53-202k] was a valid legislative determination that did not violate the constitutional prohibition against double jeopardy." *State* v. *Williams*, 48 Conn. App, 361, 373–74, 709 A.2d 43, cert. denied, 245 Conn. 907, 718 A.2d 16 (1998). We conclude, therefore, that the defendant's double jeopardy claim is without merit.

Nevertheless, our Supreme Court recently concluded that § 53-202k was a sentence enhancement provision, not a separate substantive offense for which a defendant could be convicted. *State* v. *Dash*, 242 Conn. 143, 146, 698 A.2d 297 (1997). The state concedes that *Dash* is controlling here and that the defendant's conviction under § 53-202k should be vacated. Accordingly, we remand the case to the trial court to vacate that conviction and to resentence the defendant to a period of twenty years on the robbery in the first degree and on the persistent dangerous felony offender convictions, enhanced pursuant to § 53-202k.

## VII

The defendant's last claim is that the trial court improperly found that there was sufficient evidence to convict him of robbery in the first degree in violation of § 53a-134. The defendant concedes that his trial counsel did not move for a judgment of acquittal at the end of the state's case or at the close of all of the evidence, and he therefore seeks review of this claim pursuant to *Golding*. We will review the defendant's claim, as the record is adequate for review and the alleged violation is of constitutional magnitude because it involves his

constitutional right not to be convicted of a crime upon insufficient proof. *State* v. *Adams*, supra, 225 Conn. 275–76 n.3.

After careful review of all of the evidence before the trial court and after construing it in a light most favorable to sustaining the verdict, we conclude that the trial court reasonably could have determined that the defendant was guilty beyond a reasonable doubt of robbery in the first degree. See *State* v. *Laws*, supra, 37 Conn. App. 281. The defendant's claim fails the third prong of *Golding*.

The judgment is reversed in part and the case is remanded with direction to vacate the defendant's conviction under § 53-202k and to resentence the defendant in accordance with this opinion. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.